**Ben DISKIN, Plaintiff-Appellant,**

v.

**LOMASNEY & CO., a Partnership, and Myron A. Lomasney, Defendants-Appellees.**

**No. 272, Docket 71-1735.**

United States Court of Appeals, Second Circuit.

Submitted Nov. 10, 1971.

Decided Dec. 13, 1971.

---

Ruben Schwartz, New York City (Martin N. Whyman, New York City, of counsel), for plaintiff-appellant.

No appearance for appellees.*

Before FRIENDLY, Chief Judge, FEINBERG, Circuit Judge, and DAVIS, Associate Judge.**

FRIENDLY, Chief Judge:

During the summer of 1968 plaintiff Diskin had conversations with defendant Lomasney, general partner of defendant Lomasney & Co., a broker-dealer, with respect to securities of two companies, Ski Park City West, S.I. and Continental Travel, Ltd. Lomasney & Co. had agreed to sell up to 60,000 common shares of the former on a "best efforts" basis and was the principal underwriter for the sale of 350,000 common shares of the latter. A preliminary registration statement with respect to the shares of Continental Travel had been filed with the Securities and Exchange Commission on August 28, 1968, but did not become effective until February 11, 1969. On September 17, 1968, Lomasney sent Diskin a final prospectus for the Ski Park City West, S.I., stock, along with a letter, the body of which read as follows:

I am enclosing herewith, a copy of the Prospectus on SKI PARK CITY WEST. This letter will also assure you that if you take 1,000 shares of SKI PARK CITY WEST at the issue price, we will commit to you the sale at the public offering price when, as and if issued, 5,000 shares of CONTINENTAL TRAVEL, LTD.

On the same day Diskin placed an order for the 1,000 shares of Ski Park City West and received a written confirmation. He later paid for these, and the validity of their offer and sale is unquestioned.

On February 12, 1969, Lomasney sent Diskin a confirmation of the sale of 5,000 shares of Continental Travel at $12 per share, apparently without any further communication. Diskin received from Lomasney a final prospectus and registration statement for these shares prior to February 28, 1969, when he paid the bill of $60,000, and received delivery. On November 19, 1969, Diskin demanded rescission. Having received no answer, he brought this action in the District Court for the Southern District of New York on January 6, 1970, claiming that the letter of September 17, 1968, insofar as it related to shares of Continental Travel, was a violation of § 5(b) (1) of the Securities Act of 1933.[1] This provision makes it unlawful for any person

to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any security with respect to which a registration statement has been filed under this subchapter, unless such prospectus meets the requirements of section 77j.

Section 2(10), so far as here pertinent, defines "prospectus" as

any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security;
. . . .

Section 12(1) provides that any person who offers or sells a security in violation of section 5

* Appellees were given permission to file a brief on or before November 30, 1971. A motion for a further extension until January 31, 1972, was denied in light of the availability of the memorandum of law submitted in the district court, which has been carefully considered.

** Of the United States Court of Claims, sitting by designation.

1. The complaint also claimed violations of the Securities Exchange Act of 1934 and of New York State law. The parties subsequently stipulated that the sole claim at issue was that raised under § 5 of the Securities Act of 1933.

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

The parties submitted agreed findings of fact and stipulated that the case should be decided thereon. The district judge dismissed the complaint on a ground not raised in the memorandum of law filed by the defendants. This was that the portion of the September 17 letter relating to the Continental Travel shares came within the exclusion set forth in the last sentence of § 2(3) of the Securities Act, providing:

The issue or transfer of a right or privilege, when originally issued or transferred with a security, giving the holder of such security the right to convert such security into another security of the same issuer or of another person, or giving a right to subscribe to another security of the same issuer or of another person, which right cannot be exercised until some future date, shall not be deemed to be an offer or sale of such other security; but the issue or transfer of such other security upon the exercise of such right of conversion or subscription shall be deemed a sale of such other security.

■■ We think the judge misapplied the last sentence of § 2(3). Although the reasons for the quoted exclusion are somewhat obscure and its administration has given rise to difficulties, see I Loss, Securities Regulation 299–300 (2d ed. 1961); IV Loss, Securities Regulation 2348–49 (Supp.1969), Congress could not have meant it to cover a letter sent by a dealer coupling the sale of a security which had been registered or the registration of which was not required for a valid offer or sale (e. g., because of §

4(3)), with an otherwise prohibited proffer of another security. Even if a completely literal reading would lead to that conclusion, which we rather doubt, "[t]here is no surer way to misread any document than to read it literally." Guiseppi v. Walling, 144 F.2d 608, 624 (2 Cir. 1944) (concurring opinion of L. Hand, J.), aff'd sub nom. Gemsco, Inc. v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945). See also Cabell v. Markham, 148 F.2d 737, 739 (2 Cir.), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L. Ed. 165 (1945). Manifestly, Congress did not intend that a sale of a few shares of a registered security or in a transaction exempted by § 4 should enable a dealer to offer the purchaser the "right to subscribe" to thousands of shares of some gamy unregistered issue without conforming with the requirements of the statute—thereby opening not a mere hole but a large sluice in the protection the Securities Act was intended to afford. The exclusion must be read as limited to rights or privileges embodied in or annexed to the security itself. For example, if a corporation issued bonds together with rights, not immediately exercisable, for common stock of the corporation, there would be no "offer" of the stock.

■ We have considered whether, despite the error in dismissing the complaint on this ground, the judgment could be affirmed on the basis that a registration statement concerning the Continental Travel shares had been filed prior to September 17, 1968, although it had not yet become effective. See § 5(c). However, the mere filing of a registration statement does not ensure the legality of *any* written offer made during the post-filing, pre-effective period; to be lawful, such written offers must be made by way of a "prospectus" which meets the requirements of § 10. See § 5(b) (1). See also H.R. Rep. No. 1542, reprinted in U.S.Code Cong. & Admin.News, 83d Cong., 2d Sess. 2973, 2983, 2996–2997 (1954). We perceive no basis for disagreeing with Pro-

fessor Loss' summary of the law in this respect:

> In sum, there are five legal ways in which offers may be made during the waiting period even if the mails or interstate facilities are used: by means of (1) oral communication, (2) the "tombstone ad," whether the old-fashioned variety under § 2(10) (b) or the expanded type under Rule 134 (successor to the old "identifying statement"), (3) the preliminary prospectus under Rule 433 [issued pursuant to § 10(b)] (successor to the "red herring prospectus"), (4) the "buff card" type of summary prospectus independently prepared under § 10(b) and Rule 434, and (5) the summary prospectus filed as part of the registration statement under § 10(b) and Rule 434a (successor to the old "newspaper prospectus" but not limited to newspapers).

I Loss, Securities Regulation 243 (2d ed. 1961). See also Jennings & Marsh, Securities Regulation 89–92 (2d ed. 1968). The letter of September 17, 1968, was none of these. Indeed, the confirmation of February 12, 1969, was a further violation unless a prospectus had been furnished, see §§ 2(10) and 5(b) (1), which the agreed statement does not say.

We pass therefore to the arguments which defendants made in their memorandum, which the district court did not reach. These were (1) that the letter was not an "offer" but was a mere expression of willingness to sell; (2) that the violation was cured by Diskin's receipt of a prospectus prior to the actual purchase; and (3) that the action was brought more than one year after the violation and was thus untimely under § 13 of the Securities Act.

▮ Although there is a paucity of authority on these issues, we think none constituted a valid defense. The statu-

tory language defining "offer" in § 2 (3)[2] "goes well beyond the common law concept of an offer." I Loss, *supra*, at 181; cf. Carl M. Loeb, Rhoades & Co., Securities Exch. Act Release No. 5870, at 7–8 (1959); People v. Jacques, 137 Cal. App.2d 823, 832, 291 P.2d 124, 129–130 (1955). Consequently, we entertain no doubt that the portion of the letter of September 17 dealing with the Continental Travel shares constituted an "offer" within § 2(3). Moreover, whether or not a dealer can lawfully "make a conditional and revocable offer to sell [without employing any of the five established procedures] if it is made clear that the offer cannot be accepted until the effective date," see I Loss, *supra*, at 224, the offer of September 17 did not measure up to that standard since it was not revocable. This case, where Lomasney apparently confirmed the sale without any further word from Diskin, would be a peculiarly unattractive one for endeavoring to carve out an exception to the statutory words. Indeed, as previously indicated, the confirmation, if unaccompanied by a prospectus, was itself a violation of § 5(b) (1).

▮ On the second point, we again agree with Professor Loss that "[w]hatever doubt there may once have been as to the applicability of § 12(1) to illegal offers [followed by legal sales] was resolved when the original definition of sale was split into separate definitions of 'sale' and 'offer' in 1954, with the incidental amendment of § 12(1) to refer to any person 'who offers or sells a security in violation of section 5' so as 'to preserve the effect of the present law' by not excluding the newly permissible pre-effective offers from liabilities under § 12." III Loss, *supra*, at 1695–96. With respect to the one-year period of limitation, although § 13 dates this from the "violation" in cases of claims under § 12(1), it would be unreasonable to read § 13 as starting the

2. "The term 'offer to sell,' 'offer for sale,' or 'offer' shall include every attempt or offer to dispose of, or solicitation of an    offer to buy, a security or interest in a security, for value."

short period for an action at a date before the action could have been brought —a construction which might lead in some extreme cases to a running of the statute of limitations before the claim had even arisen. Furthermore, the limitation argument would be wholly drained of force if, as seems likely, the confirmation of February 12, 1968, was itself a violation.

■■ The result here reached may appear to be harsh, since Diskin had an opportunity to read the final prospectus before he paid for the shares. But the 1954 Congress quite obviously meant to allow rescission or damages in the case of illegal offers as well as of illegal sales. Very likely Congress thought that, when it had done so much to broaden the methods for making legal offers during the "waiting period" between the filing and the taking effect of a registration statement, it should make sure that still other methods were not attempted. Here all Lomasney needed to have done was to accompany the September 17, 1968 letter with any one of the three types of prospectus for the Continental shares mentioned in the extract we have quoted from Professor Loss' treatise. Very likely Congress thought a better time for meaningful prospectus reading was at the time of the offer rather than in the context of confirmation and demand for payment. In any event, it made altogether clear that an offeror of a security who had failed to follow one of the allowed paths could not achieve absolution simply by returning to the road of virtue before receiving payment.

The judgment dismissing the complaint is reversed, with instructions to enter judgment for the plaintiff that, upon delivery of 5,000 shares of Continental Travel, Ltd., he shall receive $60,000 with interest from February 28, 1969,[3] and costs.

---

3. We assume no dividends have been paid. If any, have been, they should be deducted.