**DIRECTION ASSOCIATES, INC.,
et al., Plaintiffs,**

v.

**PROGRAMMING AND SYSTEMS,
INC. and Irwin Mautner,
Defendants.**

**No. 73 Civil 4768.**

United States District Court,
S. D. New York.

March 23, 1976.

Leonard S. Sandweiss, New York City, for plaintiffs.

Tanner & Friedman, P. C., New York City, for defendants; Arthur S. Friedman, Peter F. Gass, New York City, of counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

What was commenced as, and should have remained, a simple action for breach of contract, by the time of trial burgeoned to one that included as many securities act claims as the ingenuity of counsel could develop. With one exception—the charge of sale of unregistered stock—these additional claims were advanced for the first time on the eve of the expiration of the statute of limitations, almost six years after the occurrence of events.

The litigation centers about an agreement dated as of August 28, 1969 among these five plaintiffs and seven other shareholders of Interstate Appraisal Company and its subsidiary, Appraisal Surveys, Inc., collectively referred to herein as "Interstate," who transferred all their shares to the defendant Programming and Systems, Inc. (hereafter "PSI"). In return, plaintiffs and the others received 25,806 shares of PSI stock, and, contingent upon Interstate's after-tax earnings in the three fiscal years ended February 29, 1972, they were to receive additional or, as the parties term it, earn-out shares to be delivered on May 15, 1972.

Now, at the conclusion of a seven-day trial, revolving in the main upon the securities acts claims, the case, stripped to its essentials, still remains what it was at its inception: one for breach of contract for failure to deliver the additional shares of stock claimed to be due pursuant to the formula set forth in the agreement—in short, the Court finds that the plaintiffs have failed to sustain their burden of proof on their various claims charging material misrepresentations or omissions with respect to the transaction in alleged violation of the anti-fraud provisions of the Securities Exchange Act of 1934.

As to the claim under the 1933 Securities Act for the sale of unregistered securities, the defendants have established that the transaction was a private offering and exempt under the criteria of *Securities & Exchange Commission v. Ralston Purina Co.*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953), and succeeding applicable authorities. The availability of the exemption is a question of fact dependent in each instance upon all the attendant circumstances.

In the instant case, the plaintiffs and non-suing shareholders were twelve in number. The defendants have demonstrated the factors of sophistication, access to information and investment intent on the part of the offerees and their designated representatives. Plaintiffs' attempt to denigrate their own knowledgeability and experience, as well as those of their fellow shareholders, flies in the face of the facts. It was abundantly established that they were able to fend for themselves and were not in need of the protection of the registration provision of the Act. Apart from their own qualifications, they were represented by an attorney throughout the negotiation and consummation of the agreement. Their attorney and Daniel Cassanto, their designated representative, were afforded every opportunity to examine PSI records and to verify any statements made by its representatives.

Additionally, they had and availed themselves of the services of their regular certified public accountant.

█ This was not a one-way transaction. It was a stock-for-stock exchange for investment purposes. The transaction was negotiated at arm's length over an extended period. Plaintiffs' representatives, knowledgeable and experienced, during the course of the negotiations had access to any information they might have required or requested—access to the same kind of information required under Schedule A of the 1933 Act; they had every opportunity to verify information, to obtain additional information and to ask questions of the defendants as to matters which they now assert were misrepresented or omitted, but failed to do so. *Cf. Klapmeier v. Telecheck Int'l, Inc.*, 482 F.2d 247, 254 (8th Cir. 1973); *Bowers v. Columbia Gen. Corp.*, 336 F.Supp. 609 (D.C.Del.1971).

Apart from the foregoing, I further find that the claim of an alleged sale of unregistered securities is barred under the applicable statute of limitations, 15 U.S.C., section 77m, the outer limits of which require that any action be brought within three years. The sale of the securities occurred as of August 28, 1969, the date of the contract; the plaintiffs received their respective PSI shares on October 23, 1969. The action was not commenced until November 1973, more than four years thereafter.

█ Plaintiffs contend, however, that their claims did not accrue until the earn-out shares were due, on May 15, 1972, or that they have not yet accrued because of non-delivery of the earn-out shares. This contention, based upon those contingent shares, must fail. The earn-out shares must be deemed to have been acquired when the transaction was consummated, in August 1969, and in any event no later than October 1969, when the original shares were physically delivered to and received by plaintiffs. *See* Securities Exchange Commission Regulation 230.144(d)(4)(C). *Cf. Pennsylvania Life Company*, 1972 C.C.H. Securities Law Reports, ¶ 79,119; *Flagg Industries, Inc.*, 1973 C.C.H. Securities Law Reports, ¶ 79,243.

Plaintiffs' reliance upon *Diskin v. Lomasney & Co.*, 452 F.2d 871 (2d Cir. 1971), to support their position that the limitation period did not commence until May 15, 1972, when defendants were required but failed to deliver the earn-out shares, or even later, is misplaced. That case simply held that the one-year provision in section 77m does not commence to run on an illegal offer until the plaintiff acquires the shares; otherwise, the statute of limitations could run before the claims had even arisen. Here, the cause of action accrued no later than the receipt by plaintiffs of the initial shares of PSI, and the sale or exchange was complete as of August 28, 1969.

As to the merits of the remaining claims, the Court has had, in addition to documentary evidence, the benefit of demeanor testimony of witnesses called by one side or the other. However, Daniel Cassanto, who was the expressly authorized agent for the five plaintiff shareholders, as well as the six others, was not called as a witness. Cassanto was not only their representative but the president, director and largest shareholder of Interstate, and he negotiated and executed the agreement on behalf of all the Interstate shareholders. He had full knowledge of what transpired at all meetings, whether with his various shareholders at which the proposal was discussed and approved, or with the defendant PSI or its representatives. During the course of the negotiations he and other representatives of the shareholders received PSI's annual report for the year ended February 28, 1969 and the 1968 preliminary prospectus of a recent rights offering by PSI.

█ The failure of plaintiffs to offer Cassanto's testimony takes on added significance, since they stated in the pretrial order that he would be called as their witness. Further, it appears that he was under subpoena by plaintiffs and, in response thereto, was present several

days in court. In the circumstances, the failure to call him to the witness stand permits the inference that his testimony would have been adverse to plaintiffs. *Cf. United States v. Dixon,* 536 F.2d 1388, 2d Cir., 1976. But even without such an inference, the Court finds that the plaintiffs have failed to carry their burden of proof as to the securities acts claims.

■ What remains for determination is whether plaintiffs have sustained their burden of proof that PSI breached the agreement of August 28, 1969 by failure to deliver the additional shares based upon the net earnings over a three-year period ending February 29, 1972, and which, if earned, were to be delivered on May 15, 1972. The Court finds that the additional shares had been earned under the formula based on net income of the acquired companies—that is, Interstate Appraisal and Appraisal Surveys, Inc.— in the three years ending February 29, 1972, and that PSI was obligated to deliver them to the shareholders severally in the same proportion as they received their shares upon the closing of the transaction in 1969. The fact that the parties' agreement was contained in a single document does not foreclose the right of the individuals to assert separate and individual claims to recover the respective amounts due them. *See, e. g., Abel v. Brayton Flying Serv., Inc.,* 248 F.2d 713, 716 (5th Cir. 1957); *Rush & Halloran, Inc. v. Delaware Valley Finan. Corp.,* 180 F.Supp. 63, 65–66 (E.D.Pa. 1960).

Defendant PSI, both upon its internal records and in its annual report dated July 7, 1972, recognized its obligation and thereafter repeatedly in writing and in annual reports reiterated its recognition that the shares had been so earned.

■ PSI seeks to avert its obligation for the delivery of the shares upon a claim that after March 1, 1972 it sustained a loss upon a Hartford project, which it contends wiped out the net earnings for the period in question, so that no shares were earned under the formula. But these alleged losses oc-

curred subsequent to the period fixed by the parties to determine whether the shares had been earned. In effect, defendants seek to "carry back" the losses upon the Hartford job. This is contrary to their agreement. The contract had no provision which permitted a carry-back with respect to contracts not completed by February 29, 1972. The agreement provided that the earnings would be determined by PSI's certified public accountant. He made the determination that the shares had been earned. Indeed, almost fourteen months after PSI was aware that losses were being entailed in a continuance of the Hartford project, both the certified public accountant and the defendant itself continued to recognize the validity of plaintiffs' claim. Even after this lawsuit was instituted, the defendant in its report to the SEC indicated that the earn-out shares had been issued.

The fact that an expert witness testified that had proper accounting practice been applied a loss would have been shown as of February 29, 1972, does not detract from the obligation to which PSI had committed itself with respect to the formula by which it was to be determined whether the earn-out shares had been realized. This hindsight expert judgment contradicts the construction placed upon the obligation over a period of fourteen months subsequent to February 29, 1972, during which defendant's chief and other executives, accounting officers and its CPA recognized the obligation.

■ The issue that remains is that of damages. The market value of the earn-out shares on May 15, 1972, the date they should have been delivered, was $1.50 per share, and each plaintiff is entitled to that sum multiplied by the number of earned shares he or it was entitled to receive. *See Simon v. Electrospace Corp.,* 28 N.Y.2d 136, 320 N.Y. S.2d 225, 269 N.E.2d 21 (1971). Plaintiffs assert that since Interstate and Appraisal are dormant and largely liquidated, they are entitled to restitution and seek the fair value of their Interstate

shares at the time they transferred them to PSI. Plaintiffs' attempt to claim a rescission and recover the value of the shares they delivered in 1969 would yield them a windfall recovery.

■ This is not a case for rescission or restitution. This was not a total nor a material breach of the parties' agreement. It was substantially performed on both sides in August 1969, when plaintiffs transferred their shares to PSI and in return received PSI shares. The so-called earn-out shares were contingent and subsidiary to the main purpose of the contract and might or might not have been realized, depending upon profits. The non-delivery of the earn-out shares did not frustrate the essential purpose of the parties' contract, which was the acquisition by PSI of Interstate, its operation as a wholly-owned subsidiary of PSI and the undertaking by key employees, including plaintiffs Sapio and Salvitti, to remain in the employ of Interstate for a three-year period.

Plaintiffs received their initial shares of PSI in consideration of those basic purposes. The contingent shares would be realized only if justified under the earnings formula. The failure to deliver the contingent shares when earned was not a breach going to the root of the contract. There was not such a total failure of consideration to justify the windfall plaintiffs seek by virtue of the unrelated drop in the market price of PSI stock. *Cf. Rosenwasser v. Blyn Shoes, Inc.,* 246 N.Y. 340, 159 N.E. 841 (1927). *See also Callanan v. Keeseville, A. C. & L. C. R. R.,* 199 N.Y. 268, 92 N.E. 747 (1910); *O'Herron v. Southern Tiers Stores,* 9 A.D.2d 568, 189 N.Y.S.2d 323 (3d Dep't 1959).

Finally, on the issue of damages, the Court rejects the testimony of plaintiffs' expert witnesses as to the value of Interstate shares in August 1969 as utterly unrealistic and highly exaggerated. In short, it finds the experts non-credible witnesses. Thus, plaintiffs are entitled to damages as indicated.

■ Defendants seek to bar recovery by plaintiffs of their damages upon.

a defense that the stockholders were under commitment to continue in the control of the day-to-day operations of Interstate and to remain in the employ of Interstate to and including February 29, 1972, and allege that four of the plaintiff stockholders breached this provision. Additionally, defendants assert counterclaims against plaintiffs Sapio and Salvitti for breach of a restrictive covenant in the written agreements not to engage in a business performing services the same as or similar to and in competition with Interstate.

The services which these plaintiffs were called upon to perform were neither unique nor extraordinary. Their services were those of appraisers or assessors, involving the same talents and experience of an ordinary appraiser or assessor. It has not been shown that when they left the employ of Interstate before the date fixed in the agreement Interstate sustained any loss. Moreover, it appears that Sapio and Salvitti left without objection by Cassanto, the chief executive officer of Interstate, if not with his consent. The termination came about as a result of a drop-off in work. Interstate voiced no objection to their gainful employment elsewhere.

Additionally, the agreement which contained the restrictive covenant was with Interstate and not PSI. There has been no showing that continued employment was a condition upon the receipt of earn-out shares. To the contrary, when Cassanto raised the issue with Mautner, president of PSI, the latter did not so construe it.

■ Finally, and most important insofar as a counterclaim is advanced against Sapio and Salvitti, it must fail since the restrictive covenants are unenforceable. It has long been the public policy of New York State (jurisdiction as to this claim is based upon diversity of citizenship, and the parties agree that New York State law applies) to frown upon restrictive covenants which in the absence of special circumstances prevent a person from engaging in the same line of business as that of his former employ-

er. *Clark Paper & Mfg. Co. v. Stenacher*, 236 N.Y. 312, 140 N.E. 708 (1923); *Murray v. Cooper*, 268 App.Div. 411, 51 N.Y.S.2d 935, 936 (1st Dep't 1944); *Kaumagraph Co. v. Stampagraph Co.*, 197 App.Div. 66, 188 N.Y.S. 678, 684–85 (1st Dep't 1921), *aff'd*, 235 N.Y. 1, 138 N.E. 485 (1923).

In the instant case, the covenant at issue has the additional vice that it has no geographical limitation which would confine it to the former employer's area of activity.

Judgment may be entered in favor of the plaintiffs, against the defendant PSI, as follows:

Direction Associates, $10,837; Thomas Street, $2,362.50; Robert M. Sapio, $1,200; Anthony L. Salvitti, $1,200; and Carmine D'Alessio, $1,200; all the aforesaid judgments to bear interest from May 15, 1972, together with statutory costs and disbursements.

The counterclaim of PSI against Sapio and Salvitti is dismissed.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.