Robert **MORSE** and Claire S. Morse, Individually and as Trustees, Plaintiffs,

v.

**PEAT, MARWICK, MITCHELL & CO.,**
**et al., Defendants.**

**No. 75 Civ. 3681 (WCC).**

United States District Court,
S. D. New York.

Nov. 21, 1977.

**620**

Milberg & Weiss, New York City, for plaintiffs; Jared Specthrie, David J. Bershad, Sharon Levine Mirsky, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant; Peat, Marwick, Mitchell & Co.; R. Anthony Zeiger, Charles A. Gilman, New York City, of counsel.

## MEMORANDUM AND ORDER

CONNER, District Judge:

Defendant Peat, Marwick, Mitchell & Co. has filed "objections" to Magistrate Raby's Report No. 2 in the above-captioned action. Defendant challenges the Magistrate's conclusion that, in an action brought under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, the effective date of the registration statement marks the earliest point from which the applicable three-year limitations period, set forth in § 13 of the Act, 15 U.S.C. § 77m, can begin to run. The Court confirms that conclusion for the reasons set forth below.

Very briefly, for purposes of background, plaintiffs' claims in this action arose from their purchases of debentures of Investors Funding Corporation (IFC) pursuant to an allegedly misleading final prospectus. Plaintiffs commenced their suit on July 28, 1975, precisely three years after the date upon which the IFC registration statement became effective (July 28, 1972). Defendant moved, *inter alia*, to dismiss plaintiffs' complaint for failure to plead compliance with the three-year limitations provision of § 13, which provides in pertinent part as follows:

> "In no event shall any * * * action be brought to enforce a liability created under section 77k * * * of this title more than three years after the security was bona fide offered to the public * *."

In a memorandum and order of April 5, 1976, as amended *nunc pro tunc*, May 5, 1976, the Court directed that plaintiffs file an amended complaint in order properly to plead compliance with the limitations provision. The complaint was amended, accordingly, and the matter thereafter set down for a hearing before the Magistrate, to determine the initial date upon which the IFC securities were "bona fide" offered to the public within the meaning of § 13.[1]

According to defendant's affidavit, submitted to the Magistrate, approximately 228 registered broker-dealers were involved in the offering and sale of the IFC securities at issue in the present case. Four registered representatives from three of the broker-dealer firms submitted affidavits on behalf of defendant attesting that they had verbally solicited and distributed preliminary prospectuses to customers with respect to the IFC securities in the period April-July 1972. The Chairman of the Board and Chief Executive Officer of the issuer similarly attested to having distributed preliminary prospectuses to broker-dealers and security holders. Defendant, finally, submitted as exhibits several checks received by the issuer from broker-dealers during the pre-effective period, apparently written by customers in payment for IFC securities. Defendant's contention is that the broker-dealer activities in question[2] established a

---

1. The Court has already ruled that if the first "bona fide" offering occurred on the effective date of the IFC registration statement, plaintiffs' action was timely. Memorandum and Order of April 5, 1976 at 6–8.

2. Since the Court has taken the affidavits and exhibits submitted by defendant into account in deciding the motion to dismiss on the basis of the statute of limitations pursuant to Rule 12(b)(6), F.R.Civ.P., the motion is treated as one for summary judgment. Rule 12(b), F.R. Civ.P. The Court notes that plaintiffs have not disputed the facts as alleged by defendant; indeed, plaintiffs expressed a willingness, before the Magistrate, to stipulate a large number of the facts which are material in the context of this motion. The facts presented by defendant which have been referred to in the text are therefore taken as undisputed for purposes of the Court's decision.

"bona fide" offering of the securities to the public prior to the effective date of the registration statement. Accordingly, defendant argues, plaintiffs' action is time-barred.

Defining the term "bona fide offered to the public" is by no means a matter free of difficulty or uncertainty. The single comment of Professor Loss with respect to the employment of the phrase in the limitations provision is that it "presumably" means "first" offered to the public.[3] III L. Loss, Securities Regulation 1742 (2d ed. 1961) (hereinafter "Loss"). But the problem remains of ascertaining the criteria by which to fix the "first" public offering date within the meaning of the statute. Neither Professor Loss nor the legislative history underlying the 1933 Act provides explicit enlightenment. The "bona fide" offering terminology, however, has been employed in related statutory contexts—in § 4(3) of the Securities Act, 15 U.S.C. § 77d(3), the dealer's exemption provision, and in § 24(e)(3) of the Investment Company Act of 1940, *as amended*, 15 U.S.C. § 80a–24(e)(3). From these provisions, it can be seen that Congress has made the "bona fide" offering terminology applicable to offerings of both unregistered and registered securities.

Thus, subsection (3)(A)[4] of the dealer's exemption provision has been uniformly interpreted by the authorities to apply to transactions by dealers following illegal public offerings in securities as to which a required registration statement has not been filed. S.Rep. No. 1036 at 14 and H.Rep. No. 1542 at 22, 83d Cong., 2d Sess. (1954), U.S.Code Cong. & Admin.News 1954, p. 2973; Sec. Act Rel. 4726 (1964) at 2 n.3; IV Loss 2327–28, 2330, 2331 (Supp.1969); *Atkin v. Hill, Darlington & Grimm*, 15 A.D.2d 362, 224 N.Y.S.2d 553, 561 n.1 (App. Div. 1st Dept.1962), *aff'd*, 12 N.Y.2d 940, 238 N.Y.S.2d 516, 188 N.E.2d 790 (Ct.App. 1963). The subsection exempts from the provisions of § 5 of the Act, 15 U.S.C. § 77e, transactions by a dealer except "transactions taking place prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter." In effect, the clause authorizes the commencement of trading in unregistered securities after the initial 40-day period of the withholding of the exemption. In this context, then, a "bona fide" offering is necessarily an illegal one, and, according to Professor Loss, the phrase is specifically meant to describe a *genuine* rather than simulated offering of securities to the public. IV Loss 2331 (Supp.1969). Two cases which have arisen under subsection (3)(A) have fixed the commencement of the "bona fide" public offering of an unregistered security on the date the security was first

---

**3.** *Ingenito v. Bermec Corporation*, 376 F.Supp. 1154, 1173 (S.D.N.Y.1974); *Kramer & Harrison v. Scientific Control Corporation*, 352 F.Supp. 1175, 1176 (E.D.Pa.1973); and *Osborne v. Mallory*, 86 F.Supp. 869, 873 (S.D.N.Y.1949), cases cited in the Court's former memorandum, support the general proposition that a "bona fide" offering of securities is the "first" offering to the public for purposes of § 13. In neither *Ingenito* nor *Osborne*, however, were the courts able to determine the "first" offering date on the factual records before them; in *Kramer & Harrison*, the court determined the date but failed to specify in its opinion whether it was within the pre-effective or post-effective period. But see, *In Re Bestline Products Securities and Antitrust Litigation*, [1974–75] CCH Fed.Sec.L.Rep. ⁋ 95,070 (D.C.Fla.1975) (holding that the "bona fide" offering occurred when the security was *last* rather than *first* offered to the public).

**4.** Subsection (3)(A) provides as follows:

"The provisions of section 77e of this title shall not apply to—
(3) transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except—
    (A) transactions taking place prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter   .   .   ."
The subsection is virtually identical to the original dealer's exemption clause enacted in 1933, which exempted from the provisions of § 5 of the Act transactions by a dealer except "transactions within one year after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter." The one-year period was reduced to 40 days under a 1954 amendment. Pub.L. No. 577, § 6.

quoted by a dealer in the "pink sheets"—in other words, on the date on which trading in the security commenced. *Kubik v. Goldfield*, 479 F.2d 472 (3d Cir. 1973); *Securities and Exchange Commission v. North American Research & Development Corp.*, 280 F.Supp. 106, 125 (S.D.N.Y.1968), *aff'd in part, vacated in part*, 424 F.2d 63, 81 n.14 (2d Cir. 1970).

The genuine public offering date of a *registered* security, on the other hand, is a matter which has not been treated in the case law. The issue is a difficult one, because a registered offering consists of two discrete phases—the waiting period and the post-effective period.[5] See generally, Jennings and Marsh, Securities Regulation, Cases and Materials 53–105 (4th ed. 1977). "Offers" of markedly different character occur during the respective phases; thus, only during the latter period may offers be made which are capable of "acceptance" in the contractual sense and only then may purchases and sales be consummated. Securities Act §§ 2(3), 5(a)(1), 15 U.S.C. §§ 77b(3) and 77e(a)(1). Defendant has advanced a statutory construction which would fix the "bona fide" offering date of a registered security within the waiting peri-

od. The theory is that a "bona fide" offer is the literal equivalent of an "offer" as defined by § 2(3) of the Act.[6] Since "offers" to the public, in the sense of solicitations of interest, distribution of preliminary prospectuses etc. are permissible during the waiting period, such offers are necessarily "bona fide" offers within the meaning of the Act.

The Court finds the theory unpersuasive. The term "bona fide offered to the public" is a term of art and one not necessarily synonymous with the full breadth of the statutory term "offer." Defendant has set forth no persuasive grounds in either policy or logic for supposing that Congress intended there to be an absolute equivalence between the two.

The Court is inclined—and assumes that this was the legislative intention—to treat the "bona fide" offering date of a registered security as the date upon which the security actually becomes available to the public for purchase and sale, i. e., the effective date of the registration statement. That date obviously provides a firm and realistic marking point for the commencement of the limitations period, as opposed

---

**5.** Notably, subsection (3)(B) of the dealer's exemption provision is addressed to *registered* offerings, and the 40-day period of the withholding of the exemption commences no earlier than the effective date of the registration statement. Although, in the context of (3)(B), Congress recognized that a public "offering" of registered securities may in fact commence prior to the effective date of the registration statement (see quotation from House Report, *infra* ), neither the specific language of the subsection, nor the pertinent material in the House Report which accompanied the passage of the provision in 1954, is conclusive as to whether Congress conceived of a *pre*-effective offering of securities as a "bona fide" offering under the Act. Subsection (3)(B) provides in pertinent part as follows:
"The provisions of section 77e of this title shall not apply to—
(3) transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except—
(B) transactions in a security as to which a registration statement has been filed taking place prior to the expiration of forty days after the effective date of such registration statement or prior to the expiration of forty days

after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter after such effective date, whichever is later * * *."
The House Report states:
"Under the revision of section 5, the offering of a registered security may commence as soon as the registration statement has been filed, but it will continue to be within the power of the registrant or the underwriters to delay the offering until some later date in the waiting period or even to some date after the registration statement has become effective. The amendment, therefore, is so worded as to make dealers subject to the provisions of section 5 for 40 days after whichever is the later of the 2 events; i. e., the effective date of the registration statement or the date the public offering in fact commences." H.Rep. No. 1542 at 22–23, 83rd Cong., 2d Sess. (1954), U.S.Code Cong. & Admin.News 1954, p. 2995.

**6.** Under § 2(3), the term " 'offer to sell', 'offer for sale', or 'offer' shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value."

to defendant's suggestion of the "initial" date upon which one or more of several hundred broker-dealers happens to solicit a customer or mail a preliminary prospectus during the waiting period. And to the extent that the bona fide offering date of an unregistered security may provide an analogy, that date, as indicated, has been fixed by the courts as the date of the commencement of trading, again, when the security is available to the public for purchase and sale.[7]

But more than this, the Court finds persuasive evidence in the 1954 amendments to the Investment Company Act of 1940, 15 U.S.C. § 80a–24(e), that Congress intended to fix the "bona fide" offering date of a registered security within the post-effective period, at least for purposes of limitations on a cause of action under § 11 of the Securities Act. The legislation in question amended the Investment Company Act to permit investment companies engaged in the continuous offerings of their shares periodically to increase the number of shares registered under the Securities Act by filing amendments to their existing registration statements rather than by filing new registration statements. See 1954 U.S.Code Cong. & Adm.News, p. 2989. At the same time, to insure that there would be *"no departure* from either the disclosure standards or the liabilities imposed upon sellers," 1954 U.S.Code Cong. & Adm.News, p. 3004 (emphasis added), Congress declared that, for purposes of § 11 liability, "the effective date of the latest amendment * * shall be deemed the effective date of the registration statement with respect to securities sold after such amendment shall have become effective," and that, for purposes of the statutory limitations period of § 13, no

security "shall be deemed to have been bona fide offered to the public prior to the effective date of the latest amendment" to the registration statement filed pursuant to the Investment Company Act. 15 U.S.C. § 80a–24(e)(3). The intention of the legislation was thus to conform the registration procedures of the Securities Act to the special needs of investment companies but, simultaneously, to preserve intact the § 11 liability of investment companies. With that in mind, Congress simply defined, for § 11 purposes, the effective date of "the latest amendment filed pursuant to this subsection * * *" as the effective date of "the registration statement." But most importantly, in terms of the issue presently before the Court, Congress provided that no "bona fide" offer within the meaning of § 13 would be deemed to occur until such effective date. As indicated, that provision was in the view of Congress simply a means of maintaining the status quo with respect to the liability of investment companies under § 11 of the Securities Act. It is thus evidence, clear and convincing in its import, that Congress regarded the effective date of the registration statement as the appropriate one for the commencement of the running of the statutory limitations period on a § 11 cause of action.

The Court is further convinced that it could not have been within the legislative intention to have the limitations period commence prior to the accrual of the statutory cause of action.[8] Section 11 imposes liability solely for material misstatements or omissions in the *effective* registration statement. Taken to its logical conclusion, the statutory construction advanced by defendant would commence the running of the period of limitations as early as the date

---

**7.** That the issuer may have received checks for IFC securities from individual broker-dealers during the waiting period is not dispositive in the Court's view. So long as the registration statement actually becomes effective, as it did in this case, that date is the logical marking point for the "bona fide" public offering.

**8.** The Court suggested as much in its former memorandum and order, as amended, at note 3:

"Since no cause of action can arise under Section 11—by that Section's very terms—until the effective date, there would seem to be some force to the argument that the three-year statute of limitations on a Section 11 claim, as provided in Section 13, should not begin to run before such date, even if the legal offering may have begun earlier."

of the filing of the registration statement.[9] With the Magistrate, the Court is incredulous that Congress could have intended a result so subversive of one of the central liability provisions of the Act.

Notably, in *Diskin v. Lomasney & Co.*, 452 F.2d 871 (1971), the Second Circuit declined to construe § 13 to commence the running of the one-year period of limitations prior to the accrual of the cause of action. The plaintiff in *Diskin* sued on the basis of § 5(b)(1) of the Securities Act and was thus subject to the one-year limitations period, requiring an action to be brought "within one year after the violation upon which it is based." The plaintiff filed his action considerably more than a year after "the violation," but within a year of his receipt of and payment for the shares of stock. Notwithstanding the untimeliness of plaintiff's action under the literal language of the statute, the Court rejected the limitations defense on the ground that the action "could [not] have been brought" prior to the date of delivery and payment, i. e., the date of plaintiff's injury. In the present case, of course, defendant has advanced a construction of the three-year provision of the statute which would start the period of limitations running on a cause of action under § 11 of the Securities Act prior to both injury *and* statutory violation. That result would be an even more "unreasonable" one than would have occurred in *Diskin*.

In sum, the Court is convinced, on the basis of both an examination of the statutory language and the unquestionable preference, both legislative and judicial, for commencing a limitations period no earlier than the accrual of the cause of action, that plaintiffs' suit under § 11 of the Act was timely brought. Accordingly, defendant's motion to dismiss on the basis of the three-year statute of limitations is denied.

SO ORDERED.

**9.** Notably, that was 440 days prior to the effective date in this case. Even in less extreme cases, however, substantial delays attend the processing of registration statements. See, Jennings and Marsh, Securities Regulation, Cases and Materials at 205–09 (4th ed. 1977).