Arthur James **GRIFFIN, III, Individually and on Behalf of all Others Similarly Situated, Plaintiffs,**

v.

**PAINEWEBBER INCORPORATED, CIBC Wood Gundy Securities Corp., Furman Selz, Garth Drabinsky, Myron I. Gottlieb, Robert Topol, Gordon Eckstein, Thomas H. Lee and Deloitte & Touche, Chartered Accountants, Defendants.**

**No. 99 CIV. 2292(RWS).**

United States District Court, S.D. New York.

Feb. 14, 2000.

---

Beatie and Osborn, New York City (Daniel A. Osborn, of Counsel), Berger & Montague, Philadelphia, PA (Sherrie R. Savett, Jeanne A. Markey, Arthur Stock, of Counsel), Schiffrin & Barroway, Bala Cynwyd, PA (Marc A. Topaz, of Counsel), for Plaintiff.

Cahill Gordon & Reindel, New York City (Charles A. Gilman, David G. Januszewski, of Counsel), for Defendants PaineWebber and Furman Selz.

Schulte Roth & Zabel, New York City (Howard O. Godnick, of Counsel), for Defendant CIBC Wood Gundy Securities Corp.

Fried, Frank, Harris, Shriver & Jacobson, New York City (Harvey L. Pitt, Mark J. Stein, of Counsel), for Defendant Garth H. Drabinsky.

Richards Spears Kibbe & Orbe, New York City (Lee S. Richards, Daniel C.

Zinman, of Counsel), for Defendant Myron Gottlieb.

Davis Weber & Edwards, New York City (Sidney Davis, Stacy Kellner Rosenberg, of Counsel), for Defendant Robert Topol.

Gibson, Dunn & Crutcher, New York City (John T. Behrendt, Peter J. Beshar, Deborah Verdile, of Counsel), for Defendant Deloitte & Touche.

### OPINION

SWEET, District Judge.

Defendants Garth A. Drabinsky ("Drabinsky"), Myron Gottlieb ("Gottlieb"), Robert Topol ("Topol"), Thomas H. Lee ("Lee"), PaineWebber Inc. ("PaineWebber"), Furman Selz ("Selz"), CIBC Wood Gundy Securities Corp. ("CIBC"), and Deloitte & Touche Canada ("D & T"), have moved to dismiss this action, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Additionally, Drabinsky, Gottlieb, Topol, and D & T move to dismiss on the grounds of *forum non conveniens*. For the reasons set forth below, the motions are granted in part and denied in part.

### The Parties

Plaintiff is a member of a purported class of persons (the "Class") who purchased or acquired the common stock of Livent, Inc. ("Livent" or the "Company") on or traceable to the public sale of such common stock commencing on or about March 27, 1996 (the "Offering").

Drabinsky was a co-founder of Livent, and Chairman of its Board of Directors (the "Board") and Chief Executive Officer from December 1989 until June 15, 1998.

Gottlieb was a co-founder of Livent, President and Chief Operating Officer from December 1989 until June 15, 1998, a member of the Board since 1993, and Executive Vice–President of Canadian Administration from June 15, 1998 until August 10, 1998.

Topol was Livent's Executive Vice President from 1989 until 1994, when he became Senior Executive Vice President. He was Chief Operating Officer from 1997 until his resignation on February 25, 1998.

Lee was a director and principal shareholder of Livent.

PaineWebber, CIBC, and Selz were the co-lead underwriters of the Offering.

D & T was Livent's auditor and principal accounting firm during the time relevant to this action.

### Prior Proceedings

The complaint (the "Complaint") in this action was filed on March 26, 1999. On April 7, 1999, the action was accepted by this Court as related to *In re Livent, Inc. Securities Litigation*, No. 98 Civ. 5686 ("*In re Livent*"). The instant motions were filed between August 2 and 10, 1999. Answer and reply papers were received through September 30, 1999. Oral argument on the motion was heard on November 10, 1999.

### Background

On a motion to dismiss under Rule 9(b) or Rule 12(b)(6), the facts alleged in the complaint are presumed to be true, and all factual inferences are drawn in the plaintiff's favor. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993). Accordingly, the facts presented here are drawn from the allegations of the Complaint and do not constitute findings of fact by the Court.

Livent is a producer of live theatrical entertainment. On or about March 27, 1996, Livent offered for sale 4,312,500 shares of common stock at $8.375/share. The shares were offered in the United States and were to trade on NASDAQ under the symbol "LVNTF." A S–1 registration statement (the "Registration Statement") and prospectus (the "Prospectus") were filed in conjunction with the offering.

Plaintiff alleges that the Registration Statement and Prospectus contained materially false and misleading statements.

The Prospectus included audited financial results for the fiscal years 1991–1995. The 1995 results were audited by D & T. The Complaint alleges that for each of these years, Livent overstated its earnings and understated its costs. The Management Discussion and Analysis ("MD & A") section of the Prospectus stated that pre-production costs associated with each individual production were deferred to the opening of the production then amortized based on expected revenues from the production. These statements were allegedly false; certain preproduction costs were allegedly deferred until well after the opening of productions by assigning costs to different productions, or by improperly capitalizing the costs to fixed assets, thereby permitting a longer amortization period. In addition, expense and accounts payable entries were allegedly removed from Livent's books and records.

The Complaint also alleges that D & T did not perform its 1995 audit in conformity with Canadian generally accepted accounting principles ("GAAP"). D & T allegedly failed to conduct meaningful audits, failed to report the accounting errors or improprieties, failed to devise and supervise an appropriate audit plan, failed to properly examine and report on Livent's internal control structure, and improperly issued unqualified audit reports on Livent.

In addition, in statements made in the Registration Statement and Prospectus, defendants are alleged to have negligently disregarded facts concerning Livent's profitability, business success, expected profitability, and market leadership.

As set forth in detail in *In re Livent, Inc. Sec. Litig.*, 78 F.Supp.2d 194, 200–02 (S.D.N.Y.1999), in 1998 the irregularities came to light, earnings were restated, and the Company filed for bankruptcy, leading to a precipitous drop in the value of the common stock.

## Discussion

### I. The Forum Non Conveniens Motions Are Denied

Drabinsky, Gottlieb, Topol, and D & T have moved to dismiss the action on the grounds of *forum non conveniens*. In *In re Livent,* this Court denied motions of these same defendants made on virtually identical grounds. *See In re Livent,* 78 F.Supp.2d at 209–12. Nothing contained in the instant motions of Drabinsky, Gottlieb, Topol, and D & T compels reaching a different result. Thus, for the reasons set forth in *In re Livent,* the *forum non conveniens* motions are denied.

### II. The Motions To Dismiss

In reviewing a motion to dismiss under Rules 9(b) or 12(b)(6), a court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir. 1993)). Dismissal is warranted only when "the plaintiff cannot recover on the facts he has alleged." *Id.*

Plaintiff in this action has alleged violations of §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77o.

### A. The § 11 Claims Are Time–Barred

■ Section 13 of the Securities Act provides, in part, that "[i]n no event shall any … action be brought to enforce a liability created under section [11] … more than three years after the security was bona fide offered to the public." "The three-year period is an absolute limitation which applies whether or not the investor could have discovered the violation." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 704 (2d Cir. 1994).

■ Defendants contend that the date on which the Livent securities were "bona

fide offered to the public" was the date the registration statement was declared effective by the Securities and Exchange Commission (the "SEC"): March 25, 1996. Plaintiff counters that the bona fide offering date was the date the securities were priced and offered to the public, which they allege was March 27, 1996. The Complaint in this action was filed on March 26, 1999.

"[A] security is 'bona fide offered to the public' at the effective date of the registration statement...." *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992); *see Jolly v. Pittore*, No. 92 Civ. 3593, 1992 WL 196813, at *1 (S.D.N.Y. Aug.5, 1992); *Morse v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 619, 622 (S.D.N.Y.1977). "That date obviously provides a firm and realistic marking point for the commencement of the limitations period...." *Morse*, 445 F.Supp. at 622.

The cases cited by Plaintiff are not to the contrary. *See, e.g., Bradford v. Moench*, 809 F.Supp. 1473, 1487 (D.Utah 1992); *Snyder v. Newhard, Cook & Co.*, 764 F.Supp. 612 (D.Colo.1991). Those cases involved *unregistered* securities, for which, of course, there can be no "effective date" because there is no registration statement. Although there is an exception for shelf registrations, *see Jolly*, 1992 WL 196813, at *1, the Livent securities are not alleged to fall into this category.

Plaintiff also contends that the date of a "bona fide offer" is an issue of fact not properly decided on a motion to dismiss. However, there is no factual dispute here. Plaintiff does not dispute that the Registration Statement was declared effective by the SEC on March 25, 1996. The dispute is simply whether, as a matter of law, the date a registration statement is declared effective by the SEC constitutes

the date the security is bona fide offered to the public. As discussed above, the case law on this question in this Circuit is unambiguous.

For these reasons, Plaintiff's § 11 claims are dismissed as time-barred.[1]

### B. *The § 12(a)(2) Claims Will Not Be Dismissed*

Defendants move to dismiss the § 12(2) claims for failure to state a cause of action, for failure to plead fraud with particularity, and for failure to meet the one-year statute of limitations in § 13. These allegations will be addressed in turn.

#### 1. *Failure to State a Cause of Action*

■ PaineWebber, Selz, and CIBC (the "Underwriter Defendants" or "Underwriters") maintain that the Complaint fails to state a cause of action. The Underwriters reason that the only portions of the offering documents alleged to have contained false or misleading statements are the audited financial statements and results and D & T's reports thereon, upon which the Underwriters are entitled to rely as a matter of law.

Section 12 imposes liability for the use of a prospectus "which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77*l*(a)(2); *see In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 621 (9th Cir.1994). Section 12 also provides an affirmative defense for persons (including underwriters) who "did not know, and in the exercise of reasonable care, could not have known, of such untruth or omission." 15 U.S.C. § 77*l*(a)(2).

While an underwriter is generally entitled to rely on the expertised portions of a

---

1. Because the § 11 claims are time-barred, the Court will not consider Defendants' motions to dismiss the § 11 claims for failure to plead fraud with particularity and for failure to state a claim. These arguments will be addressed, however, in the context of the § 12(2) claims, which defendants have not alleged to be barred by the 3–year statute of limitations, as § 12(2) claims run from the date of sale, not from the date of the first bona fide offer. *See* 15 U.S.C. § 77m.

registration statement, in order to do so the underwriter must meet the burden of proof that it "had no reasonable ground to believe and did not believe," *id.* § 77k(b)(3)(C), that the expertised portions contained untruths or omissions. This is not a question properly resolved on a motion to dismiss. Plaintiff is only required to plead "a short and plain statement of the claim," Fed.R.Civ.P. 8(a), not to plead statements in anticipation of affirmative defenses.

## 2. *Failure to Plead Fraud with Particularity*

■ Defendants also maintain that this action is grounded in fraud, thereby triggering the heightened pleading requirements of Fed.R.Civ.P. 9(b), which Plaintiff allegedly has failed to meet.

Plaintiff responds that the action does not sound in fraud, but in negligence, and hence the heightened pleading requirements are inapplicable, and the Complaint is sufficient.

The Second Circuit has not spoken on the question of whether 9(b)'s heightened standards are applicable to actions brought pursuant to §§ 11 or 12(a)(2) of the Securities Act, and courts in the Southern District are divided on the question. *See, e.g., In re N2K Inc. Sec. Litig.,* 82 F.Supp.2d 204, 209 n. 10 (S.D.N.Y.2000) (9(b) applies); *Schoenhaut v. American Sensors, Inc.,* 986 F.Supp. 785, 795 (S.D.N.Y.1997) (same); *Geiger v. Solomon–Page Group, Ltd.,* 933 F.Supp. 1180, 1189 (S.D.N.Y.1996) (same); *In re In–Store Advertising Sec. Litig.,* 878 F.Supp. 645 (S.D.N.Y.1995) (9(b) inapplicable); *Nelson v. Paramount Communications, Inc.,* 872 F.Supp. 1242 (S.D.N.Y. 1994) (same).

Even the courts which have held that 9(b) can be applicable, however, have so held in cases where there were actual allegations of fraud in the complaint. *See, e.g., Schoenhaut,* 986 F.Supp. at 795 ("Plaintiffs ... have alleged fraudulent intent."). Fraud is certainly not a necessary

element of a claim brought pursuant to § 11 or § 12(a)(2), in contrast to a claim brought pursuant to, for example, Rule 10b–5.

Here, Plaintiff has carefully avoided making allegations of fraud. Defendants maintain that the Complaint is, nevertheless, "grounded in fraud" and that, in any event, such artful pleading should not permit Plaintiff to escape the requirements of 9(b).

Nonetheless, the Complaint is sufficient. To illustrate why, it is helpful to compare *Shapiro v. UJB Financial Corp.,* 964 F.2d 272 (3d Cir.1992) with *In re Chambers Development Sec. Litig.,* 848 F.Supp. 602 (W.D.Pa.1994).

In *Shapiro,* the section of the complaint alleging violations of § 12(2) of the Securities Act explicitly incorporated allegations from earlier sections of the complaint stating that the defendants "employed devices, schemes, and artifices to defraud." *Shapiro,* 964 F.2d at 276 n. 6, 287. Moreover, the § 12(2) allegations did not allege negligence. *See id.* at 287. The *Shapiro* court could "see no way to construct a negligence cause of action here." *Id.* at 288.

By contrast, in *Chambers,* the plaintiffs "selectively parsed their complaint to indicate that their § 11 and § 12(2) claims ... are based upon negligence in connection with the Registration Statements and Prospectae accompanying the public offerings." *Chambers,* 848 F.Supp. at 624. The *Chambers* court held that Rule 9(b) was not applicable to those claims. Significantly, the court so held notwithstanding the fact that other sections of the complaint, which alleged violations of § 10(b) of the Exchange Act and of Rule 10b–5 promulgated thereunder, *did* make allegations of fraud.

Defendants here make much of the fact that in the related action, *In re Livent,* Plaintiff's complaint is grounded in fraud, and they urge that Plaintiffs "cannot have it both ways." This reasoning, however, is

contrary to the plain text of Rule 8 of the Federal Rules of Civil Procedure: "A party may ... state as many separate claims or defenses as the party has regardless of consistency...." Fed.R.Civ.P. 8(e)(2). At this point in the proceedings, dismissal of the § 12(a)(2) claims is not warranted.

### 3. *The One–Year Statute of Limitations Has Not Run*

■ Defendant Lee also moves to dismiss the § 12(a)(2) claims for failure to plead compliance with the one-year statute of limitations set forth in § 13 of the Securities Act, which provides that "No action shall be maintained to enforce any liability created under section ... 77*l*(a)(2) [i.e, § 12(a)(2) ] ... unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence...." 15 U.S.C. § 77m.

Paragraph 45 of the Complaint sets forth the circumstances under which Livent disclosed that its financial statements from 1991 through 1998 were materially false and misleading. This disclosure took place in August 1998. The Complaint was filed on March 26, 1999, less than one year after the discovery of the false statements. When coupled with Plaintiffs' averments in paragraph 57 of the Complaint that "[l]ess than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based," the allegations sufficiently plead that discovery of the untrue statements or omissions would not have been made through the exercise of reasonable diligence.

### 4. *Failure to Comply with Notice Provisions of the PSLRA*

The Underwriters maintain that Plaintiff has failed to comply with the early notice provision of the PSLRA, which requires that:

Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated business-oriented publication or wire service, a notice advising members of the purported class -

(I) of the pendency of the action, the claims asserted therein, and the purported class period; and

(II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 77z–1(a)(3)(A)(i).

Plaintiff does not dispute that he has failed to comply with this provision. However, the PSLRA is silent regarding the effect of a failure to comply. Defendants seek dismissal of the action, but such a remedy would not serve the purpose for which the early notice provision was enacted, which was "to enable investors to intervene in the litigation and take charge of it by, among other things, selecting the lawyers to represent the class and setting the terms of their compensation." *Ravens v. Iftikar,* 174 F.R.D. 651, 653 (N.D.Cal. 1997).

To complicate matters, Plaintiff moved on September 2, 1999 to consolidate this action with *In re Livent,* which motion the Court adjourned until resolution of the various motions to dismiss in this action and in *In re Livent.* The motion to consolidate contains a request that Plaintiff in this action be appointed a lead plaintiff under the PSLRA, but it is an open question whether the notice requirements have been satisfied in connection with that request.

For these reasons, the Court will refrain from ruling on this aspect of the Underwriters' motion to dismiss. A date will be set for a pretrial conference on all the related Livent cases at which the issues of consolidation and the notice requirements of the PSLRA will be addressed.

### 5. *The § 12(a)(2) Claim Against CIBC Will Not Be Dismissed*

CIBC moves to dismiss Plaintiff's § 12(a)(2) claim against it on the ground that the Complaint does not allege that CIBC was a "person who offers or sells a security" under § 12 in the Offering.

 Although the Securities Act does not define the term "seller," the Supreme Court clarified the meaning of the term in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Under *Pinter*, a person is a "seller" under § 12(a)(1) if it either: (1) transferred title to the securities at issue; or (2) actively solicited the sale of the securities with a motivation to serve its own financial interests or those of the securities owner. The Second Circuit has extended this analytical framework to § 12(a)(2). *See Commercial Union Assur. Co. plc v. Milken*, 17 F.3d 608, 616 (2d Cir.1994); *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 49 (2d Cir.1991).

Plaintiff does not meet the first prong of the *Pinter* analysis with respect to CIBC, because Plaintiff has alleged that he purchased the shares in question from Paine-Webber. As to the second prong, CIBC maintains that the generalized allegations in the Complaint—e.g., that CIBC "substantially participated in the commission of the wrongs alleged herein through [its] involvement in the Offering" and that CIBC "participat[ed] in the preparation of the false and misleading Prospectus"—do not suffice to establish direct and active solicitation of Plaintiff's purchase of shares.

Plaintiff counters that since CIBC was a co-lead underwriter of the Offering, actively solicited the sale of Livent stock, sold at least 830,000 shares of Livent using the Prospectus, and collected substantial underwriting fees, it meets the second prong of the *Pinter* analysis.

Unfortunately for Plaintiff, several of these allegations do not appear in the Complaint. That they appear in Plaintiff's memorandum of law in opposition to these motions to dismiss does not cure the defect. *See, e.g., Sprince v. Hayden Books*, No. 97 Civ.1936(MBM), 1997 WL 661120, *3 (S.D.N.Y. Oct. 22, 1997).

On the other hand, the cases cited by CIBC in its memoranda involve, for the most part, factual situations readily distinguishable from the one in the instant case. The case most on point, *In re WebSecure, Inc. Sec. Litig.*, 182 F.R.D. 364, 368–69 (D.Mass.1998), dismissed a § 12(a)(2) claim against a lead underwriter in a securities offering because the complaint had not alleged that any plaintiff—let alone the named plaintiff—had purchased securities from that underwriter. *See id.* at 368–69. Nevertheless, the *WebSecure* court granted the plaintiffs in that case the right to replead their § 12(a)(2) claims to allege that at least one plaintiff purchased securities from that underwriter, which the court implied would suffice to allege a § 12(a)(2) claim. *See id.*

This is a trivial issue upon which CIBC has devoted a good number of pages in its memoranda of law. The obvious and most expedient means of rectifying this defect is to follow the course taken by the *WebSecure* court. Accordingly, Plaintiff will be granted leave to replead his § 12(a)(2) claims against CIBC within thirty days from the date of this opinion to allege that a member of plaintiff's purported class purchased at least one share from CIBC.

### 6. *The § 15 Claim Against Lee Will Not Be Dismissed*

 Lee also moves to dismiss the § 15 claim against him. Lee maintains that his liability under § 15 is predicated upon liability under § 11 and § 12(a)(2). The § 11 claim will be dismissed for the reasons stated above. As for the § 12(a)(2) claim, Lee maintains that the Complaint alleges only that the Underwriters violated § 12(a)(2), and that Lee did not control the Underwriters.

Plaintiffs respond that Lee, a director and 20% shareholder of Livent, is a control person of Livent, which is also liable under § 12(a)(2).

"Control person liability under Section 15 ... is established when a plaintiff proves a primary violation of the securities laws and that the controlling person had direct or indirect power to control the primary violator." *In re U.S.A. Classic Sec. Litig.,* No. 93 Civ. 6667(JSM), 1995 WL 363841, *6 (S.D.N.Y. June 19, 1995). As set forth above, the Complaint alleges a primary violation of § 12(a)(2). However, Plaintiffs acknowledge that the primary violator over which Lee is alleged to have had control is Livent, which is not a named defendant because of its bankruptcy.

Thus, Lee is correct that, as the Complaint now stands, it does not properly state a § 15 claim against Lee. Again, however, this defect is best remedied by permitting Plaintiff to replead to name Livent as a nominal defendant (as it is so named in *In re Livent*) and to allege facts sufficient to state a § 12 claim against Livent. Contrary to Lee's urgings, Plaintiffs do not have to allege particularized facts of Lee's conscious misbehavior. As discussed above, this action does not sound in fraud.

### Conclusion

The § 11 claims are dismissed as to all defendants.

Plaintiff is given leave to replead his § 12(a)(2) claim against CIBC, and to name Livent as a nominal defendant, within thirty (30) days of the date of this opinion.

It is so ordered.