**FLUM PARTNERS, Plaintiff,**

v.

**CHILD WORLD INC., Cole National Corp., CHF Corp. and New CHF Corp., Defendants.**

**No. 81 Civ. 2416.**

United States District Court,
S.D. New York.

Feb. 23, 1983.

---

**2.** *See Libutti v. Di Brizzi,* 337 F.2d 216, 219 (2d Cir.1964), *adhered to,* 343 F.2d 460 (2d Cir. 1965).

Jones, Day, Reavis & Pogue, Cleveland, Ohio, Willkie, Farr & Gallagher, New York City, for defendants; Barry L. Springel, Cleveland, Ohio, James J. Calder, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Flum Partners, is an investment partnership whose managing and sole general partner, Jerome S. Flum ("Flum"), is an attorney who gave up the practice of law in 1968 to enter the investment market and has acted since as a self-described "sophisticated financial analyst." In a two-day period, June 24–26, 1980, he purchased for plaintiff 101,200 shares of Child World, Inc. ("Child World"), a publicly traded stock on the American Stock Exchange, for a total cost of $910,200 at slightly less than $9 per share. In January 1981, as a result of a private merger of Child World into a subsidiary of Cole National Corporation ("Cole"), plaintiff received $16.75 per share, a profit of $784,000.

Despite this substantial profit in a seven-month period, plaintiff commenced this action against Child World and Cole,[1] upon allegations that the shares were worth more than it received and it was deprived of their true value by reason of a fraudulent scheme by the defendants whereby the market price of the shares was artificially depressed prior to the merger so that they were acquired at a lower price than would have been possible except for the fraud.

The complaint contains three counts, discussed in detail hereafter. Count 1 alleges fraudulent and manipulative conduct by the defendants in violation of section 10(b) of the Securities Exchange Act of 1934 ("the Act"),[2] and Rule 10(b)(5) promulgated thereunder;[3] count 2 alleges fraudulent omissions and misstatements by defendants in violation of the proxy solicitation provi-

Meltzer, Lippe & Goldstein, Mineola, N.Y., for plaintiff; Richard A. Lippe, William D. Denson, Mineola, N.Y., of counsel.

1. Two other corporations, subsidiaries of defendant Cole, are also named as defendants. All these defendants are referred to as Cole in this opinion.

2. 15 U.S.C. § 78j(b).

3. 17 C.F.R. § 240.10b–5.

sion of section 14(a) of the Act[4] and Rule 14(a)(9) promulgated thereunder;[5] count 3 alleges violations by defendants of their fiduciary duties to plaintiff and common law fraud as pendent to the federal claims asserted in counts 1 and 2. Jurisdiction is grounded upon section 27 of the Act[6] and also upon diversity of citizenship.

The defendants, based upon Flum's deposition testimony, exhibits offered thereat and other documents, move for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure upon the ground that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law because (1) plaintiff's claimed injury was not caused by any of the federal securities laws violations alleged in the complaint; and (2) plaintiff's exclusive remedy with respect to its state law claims was an appraisal of its Child World stock.[7]

Child World is a leading operator of retail toy supermarkets. Its operations center about large warehouses located in Massachusetts and Ohio, from which it supplied products to its retail supermarkets by the company's fleet of trucks. This method of distribution required that the retail markets be located in close proximity to the warehouses. By contrast, Child World's major competitor supplied its retail toy markets through a series of smaller warehouses located throughout the country affording greater geographic flexibility, increased operational efficiency and, according to plaintiff, the prospect of greater profitability.

Flum, for some five years before the purchase of the shares that are the subject of this action, had made a close study of Child World on the basis of its annual stockholder reports, its Securities and Exchange Commission ("SEC") filings, and his contact with specialists in the toy supermarket retailing business. The purchase was made after he had concluded on the basis of information derived from publicly available documents and management officials of Child World that it intended to embark upon a new and aggressive expansion program by opening a large number of retail supermarkets throughout the United States and in close proximity to warehouses with the prospect of increased operating efficiency and greater effectiveness as a competitor in the market.

On July 3, 1980, soon after plaintiff had acquired its shares, Child World filed with the SEC a preliminary prospectus for a public offering of $15,000,000 long-term subordinated debentures, the proceeds of which were to be used for expansion of its business by opening new retail stores and for general corporate purposes. On July 7, 1980, the contemplated offering was advertised in the Wall Street Journal. The subsequent withdrawal of this offering and another event—the purchase of Child World shares by Cole and the merger thereafter of Child World into a Cole wholly owned subsidiary—are at the hard core of plaintiff's security fraud and common law claims.

Cole is a major retailer operating over 1600 specialty retail stores throughout the United States. On July 31, 1980 Cole indicated to Sidney Shneider ("Shneider") and Joseph Arnesano ("Arnesano"), founders of Child World and owners of fifty-one percent of the outstanding shares, its interest in acquiring them. On August 6 Child World announced a temporary postponement of the public offering of $15,000,000 because of unfavorable market conditions—more particularly, high interest rates.

Cole and Child World representatives conducted negotiations over a two-day peri-

4. 15 U.S.C. § 78n.

5. 17 C.F.R. § 240.14a–9.

6. 15 U.S.C. § 78aa.

7. Plaintiff, in opposing the defendants' motion for summary judgment, also cross-moves for leave to serve an amended complaint on the ground that it "will elucidate the bases for plaintiff's claim . . . correct errors, and state with greater specificity those matters essential to plaintiff's recovery." Plaintiff's Notice of Motion at 2. Although the defendant opposes the motion to amend, it is granted consistent with the liberal policy of Fed.R.Civ.P. 15. The amended complaint is referred to as "the complaint."

od, on August 20 and 21, and consummated an agreement on August 21, whereby Cole purchased from Shneider and Arnesano 865,000 shares of Child World stock, or 41.3% of the outstanding shares, for $16.75 per share. These shares, together with those previously purchased by Cole in the open market between July 16–19, 1980, amounted to 42.7% of the outstanding shares. Shneider and Arnesano retained 9.6% of the total outstanding shares. The agreement provided that Cole was to propose a statutory merger whereby the remaining publicly held outstanding shares would be acquired at $16.75; further, that Shneider and Arnesano would recommend approval of the Cole merger proposal to Child World's Board of Directors and shareholders. The merger proposal was conditioned upon a five-year employment agreement between Child World and Shneider at an increase in salary from $160,000 to $225,000 per year. On August 21, 1980 Cole and Child World issued a public announcement of the purchase of the Shneider and Arnesano shares and the price paid therefor and that Cole intended to propose to the Board of Directors of Child World a statutory merger to acquire the balance of the outstanding shares at $16.75, the same price paid to Shneider and Arnesano.

On October 21, 1980, Child World's Board of Directors approved an agreement of merger with Cole. On December 4, 1980, Child World mailed a proxy statement to its shareholders recommending approval of the merger. The statement informed the public shareholders that their affirmative votes were not needed since Cole, Shneider and Arnesano, who owned the necessary majority of shares required for approval, intended to vote in favor of the merger, which meant the merger would be approved. The minority stockholders also were informed of their right under Massachusetts Business Corporation Law[8] to an appraisal as an alterna-

tive to acceptance of the merger price and quoted the relevant section of the Massachusetts Business Corporation Law. This provided in general that in the event of an appraisal proceeding the shareholder was entitled to the value of the shares on the day preceding the announcement of the merger agreement—in this case, August 20, 1980. The closing price on August 20, 1980 was $11.875,[9] which was $4.875 less than the price offered to the minority shareholders.

On December 4, 1980 plaintiff wrote to the SEC stating its belief that the merger price of $16.75 was "grossly unfair to the minority shareholders." On January 6, 1981 plaintiff objected to the proposed merger and invoked its right to appraisal of its shares under the Massachusetts law. Later, plaintiff withdrew its demand for appraisal because, among other reasons, it decided a lawsuit was a preferable vehicle by which to challenge the fairness of the merger price. On January 15, 1981 the merger was approved and under its terms plaintiff received $16.75 per share. Thereafter, plaintiff commenced this action.

However variously stated under the respective counts, the essence of the plaintiff's charges is that Cole, aided by Shneider, engaged in a manipulative or deceptive scheme to acquire the shares of minority shareholders at a price below their true value by fraudulent acts both prior to their acquisition of the shares and thereafter by omissions and misrepresentations in the proxy statement. We consider each count separately.

### The Section 10b Count

■ Plaintiff alleges that the "temporary postponement" by Child World on August 6, 1980 of the $15,000,000 subordinated debenture offering because of "unfavorable market conditions"—prevalent high interest rates—was not the real reason for the post-

---

**8.** The statutory merger was to be effected with a subsidiary of Cole under Massachusetts Business Corporation Law.

**9.** During the period from January 1980 through July 1980 a total of 326,000 shares were traded on the American Stock Exchange for an aver-

age monthly volume of 46,571 shares at prices ranging between $6.12 and $11.50 per share. During 1979 a total of 428,600 shares were traded for an average volume of 35,717 shares at prices ranging between $8.62 and $14 per share.

ponement; rather, it was part of a manipulative and fraudulent scheme participated in by Shneider and Cole to artificially "depress" and to put a "lid" on the price of the shares during their negotiations for the acquisition of the Shneider-Arnesano stock, at which time the shares were selling at the market at around $11; that the announcement on August 6 of the withdrawal of the debenture offering prior to Cole entering into the agreement with Shneider and Arnesano was also intended to create significant uncertainty in the investment community as to Child World's ability to secure the necessary financing to implement its planned expansion since it indicated no alternative source of financing; that the scheme succeeded; that although the lid price of approximately $11 was below the $16.75 which plaintiff and other minority shareholders received, the true value was $25 per share.

The defendants, in support of their motion for summary judgment, submitted the affidavit of John E. Beard, Esq., a partner in the Boston law firm of Ropes and Gray, who at the time of events at issue was outside general counsel, an officer and director of Child World. Beard was in overall charge of Child World's contemplated $15,-000,000 subordinated debenture offering in connection with the preliminary prospectus referred to above which had been prepared. Beard swore that he was present on July 23, 1980 during which the discussion to postpone the offering had been reached and that the "only reason . . . for [t]he decision was the unacceptably high rate of interest which prevailed at that time." [10] Beard further swore that to the best of his knowledge the decision to postpone the offering was made prior to the point in time that Cole first expressed any interest in acquiring Child World and that "Cole had nothing whatsoever to do with the decision to postpone the Offering." [11]

Obviously, Beard's affidavit put at issue the plaintiff's critical and basic charge that Cole, aided by Shneider, had postponed the debenture offering as part of a manipulative scheme for the sole purpose of artificially depressing and putting a lid on the market price of Child World shares during the period of their negotiations which led to the acquiring of the Shneider-Arnesano shares.

Flum, in response to the unequivocal Beard affidavit, and without the slightest evidentiary support, merely questioned its verity. In the absence of proof to sustain its charge, Flum relied upon "inferences" and "conclusions" based upon the sequence of events and his expertise in the investment business.[12] But the Court is required to deal with facts and not fine-spun theories lacking an evidential foundation. The Court thereupon decided, while the defendants' motion for summary judgment was sub judice, to afford plaintiff discovery to take the testimony not only of Beard but of Shneider, any other director of Child World or any other person as to the reason for the postponement. Those depositions have been concluded.

Despite the full discovery granted plaintiff of any and all persons with knowledge of the pertinent and underlying reasons that led to the decision to withdraw the debenture offering, it still has not presented a shred of evidence to impugn the integrity of Beard's affidavit or which in anywise meets the unequivocal testimony of witnesses that the sole reason for the withdrawal was the excessive interest rate. Indeed, following completion of discovery, the plaintiff advised the Court that "[t]he depositions that were conducted by plaintiff did not disclose any additional information regarding the termination of the Child World debenture offering which supports plaintiff's contention. Accordingly, plaintiff has already submitted to the Court all available information which supports its claim." [13]

10. Beard Aff. ¶ 3.

11. Beard Aff. ¶ 4.

12. Flum Aff. at 1.

13. Letter of Richard A. Lippe, Esq. (Feb. 10, 1983).

The record compels the conclusion that plaintiff's contention that the withdrawal of the debenture offering was conceived in fraud and was a manipulative device or scheme to put a "lid" on the Child World shares while the negotiations were underway for their acquisition is without factual support and presents no genuine issue of fact.[14]

In the circumstances, the defendants' motion for summary judgment is granted as to the first claim. This Court is not unmindful of the rigidity and, as former Chief Judge Kaufman has expressed it, the "timidity" with which at times our Court of Appeals has withheld application of the summary judgment rule to assure that a party is not denied his right to a trial on a genuine fact issue.[15] Here, however, to refuse to grant the motion upon the sworn facts presented by defendant, in the absence of a scintilla of evidence to raise a genuine issue of fact thereto, would render the rule a dead letter and subject defendants to unwarranted harassment and substantial expense.[16]

### The Section 14(a) Count

As already noted, after the acquisition by Cole of the Shneider and Arnesano shares, the public shareholders were notified of the proposed statutory merger and that their affirmative votes were not needed, since Cole, Shneider and Arnesano, who owned the necessary majority, intended to vote in favor of the merger.

The plaintiff charges that the proxy statement sent to the public shareholders on December 14, 1980 contained false and misleading statements and omitted material facts tending to indicate a higher value for the Child World shares than the merger price of $16.75. Thus, it alleges that the statement failed to disclose that the Lionel Corporation ("Lionel"), the second largest toy company in the industry, was an aggressive purchaser of retail toy markets and prior to Cole's meetings with Child World representatives had indicated an interest in acquiring it; that Lionel customarily paid a significantly higher price based on net book value of the company to be acquired, which would have been "higher ... than ... the final price agreed upon by Cole" for its acquisition of Child World shares;[17] and that "given Lionel's prior record of acquisitions, it is likely that Lionel would have paid a 'premium' for Child World since

**14.** Apart from the opportunity afforded by the Court to plaintiff to take the deposition of any person having knowledge of the reasons for the withdrawal of the debenture offering, it is significant that long prior to the hearing of the defendants' motion for summary judgment, plaintiff, under a stipulation, had reserved to itself leave to apply to the Court for discovery relating to any issue raised by the motion and yet it failed to do so, although it had a full year within which to take the depositions. After the plaintiff had taken depositions authorized by the Court on the issue of the withdrawal of the debenture offering, plaintiff sought to take additional depositions and document discovery, regarding matters that went far beyond the specific issue as to which discovery was granted. The Court denied plaintiff's application as it was satisfied it was designed primarily to delay the resolution of the summary judgment motion and there was no need for document production. (Memorandum Endorsement January 24, 1983). The Court was and remains satisfied that under all the circumstances the request for documentary discovery at that late date was "nothing more than a 'fishing expedition' which would needlessly delay the proceeding .... The discovery rules are not a hunting license to conjure up a claim that does not

exist." *Samuels v. Eleonora Beheer, B.V.,* 500 F.Supp. 1357, 1362 (S.D.N.Y.1980) (footnotes omitted), *aff'd on opinion below,* 661 F.2d 907 (2d Cir.1981).

**15.** *Applegate v. Top Associates, Inc.,* 425 F.2d 92, 96 (2d Cir.1970).

**16.** *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741–43, 95 S.Ct. 1917, 1928–29, 44 L.Ed.2d 539 (1975). *Cf. Applegate v. Top Associates, Inc.,* 300 F.Supp. 51 (S.D.N.Y.1969), *aff'd,* 425 F.2d 92 (2d Cir.1970); *see also, Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969); *Community of Roquefort v. William Faehndrich, Inc.,* 303 F.2d 494, 498 (2d Cir.1962); *Morgan v. Sylvester,* 125 F.Supp. 380, 390 (S.D.N.Y.1954), *aff'd per curiam,* 220 F.2d 758 (2d Cir.), *cert. denied,* 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955). *Accord: Dressler v. The MV Sandpiper,* 331 F.2d 130, 134 (2d Cir.1964); *Schwartz v. Broadcast Music, Inc.,* 180 F.Supp. 322, 325 (S.D.N.Y.1959).

**17.** Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at 9.

Child World, prior to the merger, was an acquisition 'jewel.' "[18] The theory as stated in plaintiff's complaint is that had the "feigned" withdrawal of the debenture offer not occurred, thereby putting a "lid" on the price of the stock, and had the Lionel interest in Child World and that it customarily paid a higher price for its acquisitions been disclosed, not only plaintiff but other minority shareholders would have concluded that the price offered by Cole was unfair and accordingly they would have made demands on Cole for an increase in price or instituted a legal action to enjoin the merger with the consequent result "the defendants would have been likely to have modified the financial terms of the merger."[19]

■ This series of conjectural assumptions which in end result, plaintiff contends, would have forced Cole to increase the terms of a price offered to the public shareholders is an exercise in sophistry. Part of plaintiff's argument rests upon the alleged "feigned" withdrawal of the debenture offering, which has been rejected by the grant of summary judgment of plaintiff's section 10–b claim. Thus, there remains only the claim of an alleged interest in Child World by Lionel, the omission of which from the proxy statement would, according to plaintiff, have caused Cole under pressure of the minority and public shareholders to have increased the price offered for their shares.

This dialectical contention must yield to the facts. There is no competent proof to support plaintiff's assertion that Lionel was interested in acquiring Child World. The hearsay statement attributed by Flum to an officer of Lionel, even if accepted, indicates that the price at which Lionel might have been interested was much below $16.75 per share that was offered and paid to the public shareholders. Additionally not to be overlooked is the fact that Cole, by reason of its purchase of the Shneider-Arnesano shares and its public purchase, had sufficient votes to effect the merger, as indeed the public shareholders were advised, and the threat of a lawsuit would hardly cause an increased offer in price.

Plaintiff also charges that the proxy failed to disclose the following: (1) that acquisitions of companies in the toy supermarket business were customarily made at prices in excess of book value with inventory calculated on a FIFO basis;[20] (2) that the projected end of the recession would result in a substantial increase in Child World's profits; (3) that Child World intended to radically alter its business by shifting to geographically diverse warehouses; and (4) that Child World should have obtained an outside appraisal of the merger price. The Court finds none of these omissions actionable under Rule 14a–9.

■ Plaintiff contends that the omission of data on other acquisitions within the industry was material in light of the justifications given by defendants in the proxy as to the fairness of the merger price, one of which was that the merger price represented a premium over net book value. While defendants did disclose that the net book value was determined on a LIFO basis,[21] plaintiff maintains that the inclusion of the omitted information would have led a reasonable shareholder to recalculate book value, and discern that the price did not exceed book value calculated on a FIFO basis. First, the proxy not only clearly stated that the inventory was calculated on a LIFO basis, but it also noted that the value of the inventory would increase if calculated on a FIFO basis, and even gave the FIFO calcu-

18. Flum Aff. at 17.

19. Flum Aff. at 20; Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at 9–10 and *passim*.

20. Under a FIFO (first-in-first-out) calculation, the oldest purchased goods represent the cost of inventory attributable to the cost of goods sold. Under a LIFO (last-in-last-out) calculation, the reverse is true. Use of a FIFO calculation, therefore, would have increased the book value of Child World's inventory. *See generally United States v. Ingredient Technology Corp.,* 698 F.2d 88, 90–93 (2d Cir.1983).

21. *See* note 20, *supra.*

lations.[22] Using these calculations, as plaintiff admits, FIFO book value for the stock would be $16.77 per share; the merger price was, of course, $16.75 per share. Even ignoring reality and assuming this two cents per share difference has material significance, plaintiff offers no support for its contention that Child World was obligated to disclose the acquisition patterns of its competitors. In fact the only competitor plaintiff makes reference to—alleged by him to be determinate of the industry pattern—is Lionel, which, according to plaintiff's own testimony referred to above, submitted a bid significantly *below* the merger price. It is plain, therefore, that plaintiff has failed to make "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable [Child World] shareholder."[23] In any event, Lionel's acquisition pattern was already publicly available. Indeed, Flum himself learned of it by reading Lionel's annual reports and Schedule 10K filings.[24] In reality, plaintiff's argument reduces to a claim that Child World's inventory "should have been computed on a FIFO basis."[25] Plaintiff answers this objection itself, noting that "computing inventory on a LIFO basis is just as legal as computing the value on a FIFO basis."[26]

Plaintiff also assails the defendants' failure to disclose that the projected end of the recession would result in a substantial increase in Child World's earnings relative to the earnings of its competitors. However, plaintiff has failed to supply the Court with any authority that even arguably supports this speculative position. An examination of the case law reveals why.[27] The Court holds that this omission, too, is not actionable. With leading economists in disagreement as to the duration of the recession, for defendant to have predicted an economic event would not only run counter to SEC rules,[28] but ironically probably expose defendants to a lawsuit of the instant type.[29] For similar reasons, the Court holds that the failure to disclose future business plans is also not actionable.[30]

Finally, plaintiff objects to defendants' failure to obtain an independent appraisal of the merger price. In the original complaint plaintiff alleged that the defendants had failed to disclose that no independent appraisal had been obtained. Such a disclosure, however, is indeed in the proxy. Shifting its ground, plaintiff now alleges that defendants *should* have obtained an outside appraisal, and that its failure to do so is actionable. Again, there is no support for this proposition, and the law is otherwise.[31]

**22.** Proxy at 19.

**23.** *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

**24.** *See* Tr.Dep. J. Flum at 196. *Cf. Rodman v. Grant Foundation,* 608 F.2d 64, 70 (2d Cir.1979) (need not disclose information in proxy that is already in public domain); *Crane Co. v. Harsco Corp.,* 509 F.Supp. 115, 121 (D.Del.1981) (tender offeror not required to disclose past completed or attempted transactions).

**25.** Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at 12.

**26.** *Id.* at 12–13.

**27.** *See, e.g., Rodman v. Grant Foundation,* 608 F.2d 64, 72 (2d Cir.1979); *Gerstle v. Gamble-Skogmo, Inc.,* 478 F.2d 1281, 1292 (2d Cir. 1973); *Kohn v. American Metal Climax,* 458 F.2d 255, 265 (3rd Cir.1972); *Dower v. Mosser Indus.,* 488 F.Supp. 1328, 1338–39 (E.D.Pa. 1980); *Lewis v. Oppenheimer,* 481 F.Supp. 1199, 1208 (S.D.N.Y.1979).

**28.** *See, e.g.,* 17 C.F.R. § 240.24a–9 & note.

**29.** *See, e.g., Staffin v. Greenberg,* 509 F.Supp. 825, 837 (E.D.Pa.1981), *aff'd,* 672 F.2d 1196 (3d Cir.1982). *See also Tanzer Economics Ass'n v. Haynie,* 388 F.Supp. 365, 368 (S.D.N.Y.1974) ("Court knows what housewives and economists know—that nobody knows how to forecast safely in the current state of the economy.")

**30.** The only authority plaintiff cites involved affirmative misstatements, not omissions. *See Gerstle v. Gamble-Skogmo, Inc.,* 478 F.2d 1281 (2d Cir.1973).

**31.** *Scott v. Multi-Amp Corp.,* 386 F.Supp. 44, 65 (D.N.J.1974) (securities laws do not require independent appraisal of merger price). *Cf. Popkin v. Bishop,* 464 F.2d 714, 720 (2d Cir. 1972).

Significantly, Flum concedes that he knew all the facts which he now advances as constituting fraudulent omissions in the proxy statement. Indeed, as noted, he wrote to the SEC saying that the shares were undervalued at $16.75, and after filing an appraisal proceeding, commenced this suit. With full knowledge of the facts, there is no basis upon which to assert reliance. In sum, the Court dismisses the plaintiff's federal securities claims.

### State Law Claims

In count three, plaintiff alleges that defendants' conduct constitutes common law fraud and breach of fiduciary duty. Under Massachusetts law, however, plaintiff's only remedy is a state appraisal proceeding—unless plaintiff can show "fraud or illegality as to him." [32] Plaintiff makes no attempt to do this. Indeed, despite its lengthy responses to defendants' arguments regarding plaintiff's federal claims, plaintiff devotes not a single word to the defense of its state law claims. Thus, one might assume that plaintiff has abandoned them. Even if not, Massachusetts requires proof that knowingly false misrepresentations were made, that plaintiff reasonably relied upon them and thereby suffered damage in order for there to be actionable fraud.[33] Here, we have already held that no false statements were made and that plaintiff did not rely on any omissions in the proxy statement. Thus, plaintiff has not shown "fraud as to him" within the meaning of Massachusetts law. In addition, because we are unaware of any provision of Massachusetts law that would render defendants' conduct "illegal," the Court holds that a state appraisal proceeding was the exclusive basis by which plaintiff could challenge the adequacy of the merger price. Since plaintiff has waived its right to an appraisal proceeding,[34] the Court dismisses count three of the complaint as well.

Defendants' motion for summary judgment, therefore is granted. The complaint is dismissed.

So ordered.

---

**32.** Mass.Ann.Laws Ch. 156B, § 98 (Michie/Law Co-op 1979).

**33.** *Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth.*, 357 Mass. 40, 255 N.E.2d 793, 796 (Supreme Judicial Court 1970). Moreover, Massachusetts has · adopted the language of Rule 10b–5 to define fraud in the sale of securi-

ties. *See* Mass.Ann.Laws Ch. 110A, § 101 (Michie/Law Co-op 1975).

**34.** In *Joseph v. Wallace-Murray Corp.*, 354 Mass. 477, 238 N.E.2d 360 (1968), the Supreme Judicial Court held that a mere demand for payment at the merger price waives a shareholder's appraisal rights.