Robert SCHOENHAUT, et al., Plaintiffs,

v.

AMERICAN SENSORS, INC.,
et al., Defendants.

No. 95 Civ. 1464(BSJ).

United States District Court,
S.D. New York.

Nov. 14, 1997.

Jeffrey S. Abraham, David J. Bershad, Robert P. Sugarman, Milberg Weiss Bershad

Hynes & Lerach, L.L.P., New York City, for Robert Schoenhaut.

Stull, Stull & Brody, New York City, for Vicent A. Romei.

Marian Popper, Wolf Popper, L.L.P., New York City, for Michael Brauser, Betty Brauser.

### MEMORANDUM & ORDER

JONES, District Judge.

This case involves plaintiffs' investment in a company, defendant American Sensors Inc. ("American Sensors" or the "Company"), that had experienced tremendous growth in its short operating history. When the Company's stock price fell, this suit immediately followed.

Plaintiffs filed this action on behalf of a class of persons who purchased American Sensors' stock through a secondary offering in January, 1995. Plaintiffs contend that the Company, its officers and directors, and the underwriters involved in the offering made material misrepresentations through statements and omissions in the prospectus for the offering and at road shows promoting American Sensors' stock in violation of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (the "1933 Act").

Pending is a motion to dismiss plaintiffs' Consolidated and Supplemental Class Action Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) by defendants Paine-Webber Incorporated ("PaineWebber") and Schroder Wertheim & Co. Incorporated ("Schroder Wertheim") (collectively, the "Underwriter defendants").

For the reasons stated below, the motion is granted.

### FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY [1]

Defendant American Sensors is a Canadian company that, at the time this suit was

---

1. The facts presented in this section are culled from (1) the Complaint, deemed true for the purposes of this motion, (2) publicly available documents filed with the Securities and Ex-

change Commission in connection with the transactions at issue, and (3) documents incorporated by reference in the Complaint. *See San Leandro Emergency Medical Group Profit Sharing*

filed, manufactured residential carbon monoxide detectors ("CO detectors"), smoke detectors, and other hazardous gas detectors. (Consol. and Supp. Class Action Compl., ("Compl."), dated August 16, 1995, ¶¶ 10, 21.) Its growth has primarily been through CO detector sales. (Compl.¶ 22.) Although incorporated in May, 1993, the Company first went public in December, 1993. (Compl.¶ 21.)

In January, 1995, Underwriter defendants PaineWebber and Schroder Wertheim led a syndicate that handled American Sensors' secondary public offering through a firm commitment underwriting.[2] (Prospectus at 49.)

Prior to this secondary offering, in November, 1994, American Sensors filed a preliminary prospectus (the "Prospectus") and registration statement with the SEC. (Compl.¶ 24.) Given the timing of the filing, the Prospectus made no representations about the quarter ending December 31, 1994, which generated record income for American Sensors. In that quarter, net income—$4.3 million—was 34% greater than that for the prior quarter ending September 30, 1994 and 59 times greater than that for the comparable quarter ending December 31, 1993, (See Aff. of Dennis Block, dated Oct. 2, 1995, Ex. B (Form 10–Q) at 20; Prospectus at 18.) Rather, the Prospectus reported data through the latest completed quarter—that ending September 30, 1994.[3]

Also in December, 1994 and early January, 1995, representatives of American Sensors, PaineWebber, and Schroder Wertheim went on a series of "road shows" in various cities, meeting with institutional investors to stimulate market interest in the Company's stock and to determine the price at which it could be sold at the offering. (Compl.¶¶ 26–27, 29–33.) Estimates were provided that American Sensors' earnings would be more than $1.00 per share for the fiscal year ending June 30, 1995, and more than $1.35 per share for the fiscal year ending June 30, 1996. (Compl.¶ 28.)

The Prospectus became effective on January 26, 1995, initiating the secondary public offering. Approximately two million shares, at a price of $15.00 per share, were acquired. (Compl.¶¶ 10, 37.) Plaintiffs individually purchased American Sensors' stock "pursuant to or traceable to" the offering. (Compl.¶¶ 5–9.)

Consistent with predictions, on February 3, 1995, PaineWebber analyst Jeffrey Sprague ("Sprague") projected that American Sensors would earn $1.04 per share for the fiscal year ending June 30, 1995, and $1.36 for the fiscal year ending June 30, 1996. (Compl.¶ 35.)

Slightly one month after the Prospectus became effective, however, on March 1, 1995, American Sensors issued a press release announcing that "the Company anticipates that results of operations for the third quarter of its 1995 fiscal year, covering January, February, and March 1995, may be lower than has been anticipated." (Compl.¶ 51.) That day, Sprague issued a new report downgrading American Sensors from "buy" to "neutral" in order "to reflect slower than expected carbon monoxide (CO) unit shipments in February and concerns about the near term outlook."

*Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 808 (2d Cir.1996) (stating that on a motion to dismiss a court may consider the full contents of a prospectus deemed "integral" to the complaint); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991) (stating that, for purposes of a motion to dismiss, the complaint is deemed to include statements or documents incorporated by reference and a court assessing a motion to dismiss a complaint alleging securities fraud may review public disclosure documents required by law to be and that actually have been filed with the SEC), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *In re Integrated Resources Real Estate Ltd. Partnerships, Securities Litigation*, 850 F.Supp. 1105, 1125 (S.D.N.Y.1993) (same).

**2.** In a "firm commitment underwriting," a principal company sells shares to a syndicate of underwriters, which in turn resells the stock to the public. *See generally* Edward I. Altman, *Financial Handbook*, § 31 (5th ed.1981).

**3.** As reflected in the Prospectus and acknowledged in the Complaint, growth in the quarter ending September 30, 1994 was also high. Compared to the prior quarter, there was a 40% increase in sales, a 53% increase in gross profit, a 107% increase in earnings before income tax provision, a 91% increase in net earnings, and a 44% increase in CO detector unit shipments. (Compl.¶ 38(b).)

(*See* Compl. ¶ 52 (referencing the report); Aff. of Dennis Block, Exh. F.)

The issuance of American Sensors' March 1, 1995 press release caused the price of its common stock to fall to $8.25 per share, down $2.375 per share. (Compl. ¶ 55.) Within 48 hours, various purchasers in American Sensors' secondary public offering filed two separate lawsuits alleging violations of federal securities laws. One week later, a third action was filed.

On May 31, 1995, the parties entered into Stipulation and Pre–Trial Order No. 1 consolidating the individual actions under the instant caption and permitting plaintiffs to file a consolidated amended complaint.

On March 25, 1997, American Sensors filed a voluntary petition for reorganization under Canada's Companies' Creditors Arrangement Act, R.C.S.1985, C–36. The next day, Canada's Ontario Court, General Division entered an order staying all proceedings against American Sensors; the order asked American courts to "act in aid of and to be complementary" to it. On May 5, 1997, this Court granted a stay of the proceedings against American Sensors and the individual defendants.[4] The Court did not, however, stay the case with regard to the Underwriter defendants.[5]

Thus, the Court proceeds to rule on the motion pending with regard to those defendants.

### DISCUSSION

## I. LEGAL STANDARD UNDER RULE 12(b)

In deciding the defendants' motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court views the Complaint in the light most favorable to the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94

S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Shapiro v. AEO/Ricoh, Inc.*, 96 Civ. 7274, 1997 WL 452026, at *2 (S.D.N.Y. August 7, 1997). The Court must accept the factual allegations contained in the Complaint as true and draw all inferences in the plaintiffs' favor. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995).

For purposes of this motion, the "Complaint" includes both the documents it references and publicly available disclosure documents. (*See supra*, n. 1.)

The Court may grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. at 1686; *accord Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994).

## II. PLAINTIFFS' STANDING

As an initial matter, the Underwriter defendants contend that plaintiffs do not have standing to assert their claims under the 1933 Act because they failed to allege (1) that they purchased their shares in the offering and (2) facts sufficient to establish a buyer-seller relationship. The Court disagrees and concludes that plaintiffs have sufficiently alleged standing.

First, because plaintiffs have alleged that they purchased securities "pursuant to or traceable to" a public offering, they have sufficiently alleged that they purchased their shares in the public offering at issue. *See In re U.S.A. Classic Securities Litigation*, 93 Civ. 6667, 1995 WL 363841, at *3 (S.D.N.Y. June 19, 1995) (finding standing under § 12(a)(2) where plaintiffs alleged purchase "pursuant to" a registration statement); *In re AES Corp. Secs. Litig.*, 825 F.Supp. 578, 593 (S.D.N.Y.1993) (finding standing where plaintiffs alleged that they purchased securi-

---

**4.** *See Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 (2d Cir.1993) (explaining doctrine of comity as one that permits courts to recognize a foreign country's law for the sake of international duty and convenience, but with due regard for the rights of United States citizens), *cert. denied*, 510 U.S. 945, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993).

**5.** *See Variable–Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, 945 F.Supp. 603, 608 (S.D.N.Y.1996) (refusing to extend American bankruptcy court's stay to party that might be liable independently of the bankrupt codefendant) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986)).

ties "traceable to" the public offering at issue).

Second, plaintiffs have adequately plead a buyer-seller relationship with the Underwriter defendants by alleging that (1) the underwriters promoted the offering and solicited buyers at "road shows," and (2) they did so to benefit themselves and American Sensors. *See In re Westinghouse Secs. Litig.,* 90 F.3d 696, 715–16 (3d Cir.1996) (stating that buyer-seller relationship is demonstrated by allegation that underwriter successfully solicited the purchase of shares, motivated at least in part by a desire to serve its own financial interests or those of the securities owner); *Capri v. Murphy,* 856 F.2d 473, 478 (2d Cir.1988); *Pallickal v. Technology International,* Ltd., 94 Civ. 5738, 1996 WL 153699, at *2 (S.D.N.Y. April 3, 1996); *In re U.S.A. Securities Litig.,* 1995 WL 363841, at ** 3–4.[6] The Underwriter defendants clearly had an interest in stimulating demand for American Sensors' stock; because the offering was accomplished through a "firm commitment underwriting," the underwriters would earn more profit as the offering price rose.

Accordingly, plaintiffs have sufficiently plead standing to sue for securities laws violations.

## III. PLAINTIFFS' §§ 11 AND 12(a)(2) CLAIMS

Plaintiffs allege that the Underwriter defendants' involvement in the issuance of the Prospectus and in the "road shows" violated §§ 11 and 12(a)(2) of the 1933 Act.

Sections 11 and 12(a)(2) require proof of "untrue or misleading statements or omissions of material fact." [7] In re *In re Donald J. Trump Casino Securities Litigation–Taj Mahal Litigation,* 7 F.3d 357, 368 (3d Cir.

1993), *cert. denied,* 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

■ A misrepresentation of fact is material under §§ 11 and 12(a)(2) when an investor would attach importance to it in making an investment decision. *Basic Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988); *Kronfeld v. Trans World Airlines, Inc.,* 832 F.2d 726, 731 (2d Cir.1987) (§ 11 case), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 700 (1988); *Sussman v. Paradigm Partners, Inc.,* 91 Civ. 2892, 1992 WL 321783, at * 9 (S.D.N.Y. Oct.26, 1992) (§ 12(a)(2) case).

■ An omission is material if there is a substantial likelihood that the "disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of the information made available." *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *Fisher v. Ross,* 93 Civ. 0275, 1996 WL 586345, at *9 (S.D.N.Y. Oct.11, 1996) (§ 11 case).

■ A court should determine whether a statement was "material" by adopting the perspective of an investor on the date the registration containing the prospectus at issue became effective. *Nelson v. Paramount Communications, Inc.,* 872 F.Supp. 1242, 1246 (S.D.N.Y.1994). Thus, "fraud by hindsight"—the attempt to impose liability for unrealized economic predictions—is not actionable. *See Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1040 (6th Cir.1991).

■ While questions of materiality have traditionally been viewed as particularly appropriate for the trier of fact, complaints alleging securities laws violations often con-

---

**6.** Plaintiffs need not specify which underwriter sold securities to each plaintiff. *In re Westinghouse Secs. Litig.,* 90 F.3d at 718; *Capri,* 856 F.2d at 478.

**7.** Section 11 imposes liability on signatories of a registration statement and on underwriters, among others, if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading...." 15 U.S.C.

§ 77k(a); *see also Herman & MacLean v. Huddleston,* 459 U.S. 375, 381–82, 103 S.Ct. 683, 686–87, 74 L.Ed.2d 548 (1983) (discussing § 11).

Section 12(a)(2) provides that any person who "offers or sells" a security by means of a prospectus or oral communication that contains a materially false statement or that omits a material fact necessary to make the statements not misleading, in light of the circumstances under which they were made, shall be liable to any "person purchasing such security from him." 15 U.S.C. § 77l(2).

tain claims of omissions or misstatements that are "obviously so unimportant that courts can rule them immaterial as a matter of law at the pleading stage." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997).

## A. Statements in the Prospectus

■ Plaintiffs assert that the following constituted material misrepresentations and omissions in the Prospectus: (1) the representation that American Sensors' products were experiencing strong consumer demand at the time of the offering and the concomitant omission of the fact that January, 1995 sales had declined 11 percent; (2) statements expressing American Sensors' optimism for the future and anticipation of continued strong consumer demand (increased sales); (3) the failure to disclose a major customer's reduction in orders; (4) the failure to disclose intense competition in the CO detector market; (5) the failure to disclose the differences between the 1993 CO detectors and the 1995 CO detectors; and (6) the failure to disclose American Sensors' plans to market a new line of CO detectors and resulting reduction in demand for the then-current products in anticipation of more advanced models.

The Court deals with each in turn.

1. *The representation that American Sensors' products were experiencing strong demand at the time of the offering and omission of the fact that January, 1995 sales had declined 11 percent.*

■ Plaintiffs contend that by employing the term *"continued* strong demand," the Prospectus falsely represented that consumer demand at the time of the offering was strong, when in fact January, 1995 sales had declined 11 percent. (Compl.¶ 49(a)). Similarly, plaintiffs argue that the failure to disclose the 11 percent decline in January, 1995 sales "rendered the statements that were made about strong demand ... materially false and misleading." (Compl.¶ 49(c)).

The phrase "continued strong demand" is not, however, materially false and misleading because it does not convey any material information. The phrase does not contain information of reasonable specificity or impart a definite indicia of performance; rather, it constitutes nothing more than a vague assertion on which no reasonable investor would rely. *See Cione v. Gorr*, 843 F.Supp. 1199, 1205 (N.D.Ohio 1994) (holding that the phrase "[we] anticipate *continued strong demand* for tire products" does not contain the "type of event specific information" necessary to render the statement material) (emphasis added); *see also Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir.1995) (finding the phrase "recession-resistant" too vague to constitute a material statement of fact); *In re Syntex Corp. Secs. Litig.*, 855 F.Supp. 1086, 1095 (N.D.Cal.1994) (finding statement that company was "doing well" too vague to be material), *aff'd*, 95 F.3d 922 (9th Cir.1996).

■ With respect to the omission of January, 1995 sales data, the Court first notes that courts have been reluctant to impose liability based upon a failure to disclose financial data for a fiscal quarter in progress— let alone for the first 26 days of a quarter. *Zucker v. Quasha*, 891 F.Supp. 1010, 1015 (D.N.J.1995) (quarter in progress and largely completed when prospectus became effective), *aff'd*, 82 F.3d 408 (3d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 85, 136 L.Ed.2d 42 (1996); *see also Glassman v. Computervision Corp.*, 90 F.3d 617, 632 (1st Cir.1996) (rejecting any brightline rule that an issuer engaging in a public offering is obligated to disclose interim operating results for the quarter in progress).

Moreover, a review of the Company's sales figures demonstrates that the omission of sales data for the first 26 days of the quarter beginning January 1, 1995 did not render the Prospectus' general assertion of "continued strong demand" materially false or misleading. Even though January, 1995 sales may have declined 11 percent when compared to the average number of units shipped per month in the previous *unreported* quarter ending December 31, 1994, (Compl.¶¶ 25(a), 49(a)), they nonetheless represented a 193 percent increase over the reported average monthly sales for the *quarter* ending September 30, 1994.[8] Indeed, demand for CO

8. Specifically, American Sensors shipped an av-

erage of 110,000 detectors per month during its

detectors in January, 1995 was nearly twice as strong as what the Prospectus described as "strong" (i.e. the results from the quarter ending September 30, 1994). Moreover, January, 1995 sales were approximately 2.5 times greater than sales for the entire 3-month quarter for January, February, and March, 1994, a more comparable period for an investor to consider given that—as the Prospectus and Complaint indicate, (Compl.¶ 25(a))—CO detector sales were historically seasonal. *See Glassman*, 90 F.3d at 631 (where prospectus represents that company's sales suffer from "cyclical variations in quarterly results," court should compare quarter to corresponding quarter in previous fiscal year).

Accordingly, statements about "continued strong demand" in the context of an 11 percent decline for January, 1995 sales are not materially false or misleading.

### 2. *Optimistic Statements Concerning Future Performance.*

Plaintiffs claim that the defendants lacked a reasonable basis for making statements in the Prospectus indicating American Sensors' optimism for the future and anticipation of increased consumer demand for its products.[9] Rather, plaintiffs contend, the defendants should have known about the decline in demand for the first 26 days of January, 1995 and that the decline would "most likely" continue, rendering any expressions of optimism or increasing demand unfounded.

The Court finds, however, that the challenged statements expressing optimism were not material misrepresentations as a matter of law for the following reasons.

First, while the Complaint alleges that the Prospectus falsely or incorrectly predicted "continued" or "increased" future success, the challenged statements are not financial projections; they do not seek to ensure definite or guaranteed growth, make specific earnings projections, predict future financial performance, or set any benchmarks.[10] Rather, the statements are nothing more than loose prophecies of future performance communicating only vague expectations.

As such, the statements communicate only immaterial information that would not be relied upon by any reasonable investor. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1427 (finding forward looking statements "general" and "non-specific" and thus inactionable) (§ 10(b) case); *Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir.1996) (finding hope of "continued prosperity" inactionable puffery) (§§ 11 and 12(a)(2) case).[11]

Second, the Prospectus "bespeaks caution." *See Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2433, 138 L.Ed.2d 194 (1997) (affirming Rule 12(b)(6) dismissal of §§ 11 and 12(a)(2) claims where prospectus contained extensive and detailed

---

quarter ending September 30, 1994, (Prospectus at 18), 242,000 CO detectors per month during its quarter ending Dec. 31, 1994, and 213,000 in January, 1995, (Compl.¶¶ 25(a).)

9. Specifically, the Complaint points to the Prospectus' use of the phrases "continued strong consumer demand" as a forward-looking statement, "anticipated increasing consumer demand," and "the Company believes that there is a significant potential for increased sales of the Company's CO detectors." (Compl.¶¶ 39, 40, 44, 45.)

10. There is no allegation that any defendant actually expected that sales of American Sensors' CO detectors would decline following the offering. Rather, the Complaint merely alleges that the Prospectus failed to predict that the Company's future prospects were not going to be as bright as its past and instead predicted "continued" future success.

11. *See also Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 212 (4th Cir.1994) (finding predictions of "significant gains" and "excellent results" too vague to be material) (§ 10(b) case); *In re Time Warner Inc. Secs. Litig.*, 9 F.3d 259, 267 (2d Cir.1993) (finding that statements promoting or "hyping" future alliances for a company were not definitive positive projections but merely suggested "only the hope of any company" for future success, and therefore were immaterial) (§ 10(b) case), *cert. denied sub nom., Ross v. ZVI Trading Corp. Employees' Money Purchase Pension Plan*, 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994); *In re Syntex Corp. Secs. Litig.*, 855 F.Supp. at 1095 (finding that CEO's expression of optimism in the future was too vague to be material) (§ 10(b) case).

cautionary language); *Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986) (affirming Rule 12(b)(6) dismissal of plaintiffs' § 10(b) claim because statements in offering documents made it clear that projected results were speculative and could vary from the predictions in material ways).

Reading the Prospectus as a whole and taking the challenged statements in context, *see Olkey,* 98 F.3d at 5, the challenged statements of optimism were surrounded by express cautionary language addressing the substance of the challenged statements. The Prospectus lists the factors upon which the Company's optimism was based and alerts investors that the Company *could not and did not* guarantee continued growth or economic success. Indeed, the Prospectus includes an extensive section on "risk factors" [12] and specifically warns that consumer demand—both present and future—was subject to change and contingent on factors "such as the timing of significant orders and the timing of new product introduction by the company and its competitors," as well as changes in certification standards.

Accordingly, even viewing the Complaint's allegations in the light most favorable to plaintiffs as the Court must, the Court finds that the challenged statements—mere general expressions of optimism and anticipation of continued future success—are "not the stuff of which securities fraud claims are made" and that the Underwriter defendants cannot be held liable for them. *Robbins v. Moore Medical Corp.,* 894 F.Supp. 661, 673 (S.D.N.Y.1995); *see, e.g., Olkey,* 98 F.3d at 5 (finding that assurances "were balanced by extensive cautionary language" and thus bespoke caution); *Bentley,* 849 F.Supp. at 432 (finding statements that business was "on plan" and "on target," even when viewed as projections of future performance, were surrounded by cautionary language and thus inactionable).

*3. The alleged failure to disclose Sam's Club's reduction in orders.*

■ As required by law, Reg. S–B, Item 101(b)(6), 17 C.F.R. § 228.101(b)(6), the Prospectus disclosed that Sam's Club was American Sensors' largest customer in the last fiscal quarter reported (ending September 30, 1994) and accounted for 32 percent of the Company's sales.

Plaintiffs contend that the Prospectus' failure to further disclose that, prior to January, 1995, sales to Sam's Club were decreasing in absolute terms and as a percentage of the Company's overall sales constitutes a material misrepresentation. (Compl.¶¶ 25(b), 49(f)).

The failure to disclose the level of sales to Sam's Club during the fiscal quarter ending December, 1994 or the month of January, 1995, however, was not a material omission as a matter of law. *See In re Verifone Securities Litigation,* 784 F.Supp. 1471, 1484 (N.D.Cal.1992) (finding no duty to disclose fact that customers listed in prospectus were not currently ordering from company because prospectus did not contain any representations about current or future orders from those customers), *aff'd,* 11 F.3d 865 (9th Cir.1993).

In this connection, the Prospectus did not list the current volume of sales to Sam's Club or predict future sales levels. Nor did the Prospectus even suggest that Sam's Club— or any other customer—would remain a customer, let alone a large one.

Moreover, the Prospectus warned that the Company's largest customers "may vary from period to period" and that the loss of a large customer could materially affect the Company. (Prospectus at 8–9.)

As such, the failure to disclose any reduction in sales to Sam's Club was not a material omission as a matter of law. Accordingly, this challenged omission does not constitute a violation of securities law.

---

**12.** The Court rejects plaintiffs' conclusory suggestion that the five and one-half page section entitled "Risk Factors" is nothing more than boilerplate disclosure. The section details distinctive risks faced by American Sensors and discloses the specific hazards present in the CO detector market. *See Olkey,* 98 F.3d at 8, 9 (dismissing plaintiff's contention that warnings in prospectus were "boilerplate" by noting that plaintiffs "offer[ed] no serious rationale as to why a reasonable investor who was reading the prospectus would consider the warnings too generic to be taken seriously....")

#### 4. The alleged failure to disclose competition in the CO detector market.

■ Plaintiffs allege that the Prospectus failed to disclose an aggressive marketing campaign launched by American Sensors' competitors in the CO detector market, which "was slowing demand for the Company's CO detectors." (Compl.¶ 49(e)).

This alleged omission, however, is not misleading as a matter of law. The Prospectus clearly and unequivocally warned investors that the CO detector business is highly competitive. For example, the Prospectus warned that "the hazardous gas detector and smoke detector industries are highly competitive and there can be no assurance that the Company will be able to continue to compete profitably in these industries." (Prospectus at 9, 38.) Moreover, the Prospectus states that "the Company's products are subject to duplication by other companies, many of which have greater financial resources and more distribution outlets than the Company." (Prospectus at 9, 38.)

Furthermore, there was no duty to disclose the activities of American Sensors' competitors, *Flum Partners v. Child World, Inc.*, 557 F.Supp. 492, 499 (S.D.N.Y.1983) (§ 10(b) case), or to state publicly that the Company was losing ground to competitors, *In re Sun Microsystems, Inc. Securities Litigation*, 89 Civ. 20351, 1990 WL 169140, at *5 (N.D.Cal. 1990) (§ 10(b) case).

Accordingly, this challenged omission does not constitute a violation of securities law.

#### 5. The alleged failure to disclose American Sensors' plans to market a new line of CO detectors.

■ Prior to the January 26, 1995 offering, American Sensors informed its key customers that it anticipated introducing a more technologically advanced CO detector. From this, plaintiffs aver, one may infer that the Prospectus was materially false and misleading in failing to disclose that products American Sensors marketed at the time of the offering were obsolete. (Compl.¶ 25(b).) Again, plaintiffs' claim fails as a matter of law.

First, the Court notes that plaintiffs cannot claim that the CO detectors American Sensors sold in January, 1995 were obsolete given that the Company sold 213,000 units that month alone. *In re Seagate Technology II Securities Litigation*, 88 Civ. 20489, 1989 WL 222969, at * 5 (N.D.Cal. May 3, 1989) (finding disk drives not obsolete because they made up a substantial portion of company's sales) (§ 10(b) case).

Additionally, the Prospectus emphasizes that the CO detector market is "characterized by rapidly changing technology and evolving industry standards which could result in product obsolescence or short product life cycles." (Prospectus at 7.) In fact, the Prospectus states that American Sensors' success hinges on its ability to "market new products" and that the Company would continue to emphasize the technological advancement of its product line.

Thus, the Company's continuing goal of introducing new improved lines was fully disclosed to potential investors. Any omission regarding plans to market a new line of CO detectors, therefore, cannot form the basis of a securities law violation.

#### 6. The alleged failure to disclose the difference between the 1993 CO detectors and 1995 CO detectors.

■ The Prospectus states that in July, 1993 American Sensors acquired the stock of American Sensors Electronics Inc., which developed American Sensors' line of CO detectors for sale in 1993. (Prospectus at 6.)

According to the Complaint, the Prospectus was materially false and misleading because it failed to point out that the ASEI CO detectors were different from its current line in 1995. (Compl.¶ 41.) This allegation fails as a matter of law.

First, the Prospectus does not imply either that the CO detectors sold in 1995 remained *identical* to those developed in 1993, or that the two detectors differed in any important respects.

Additionally, the Prospectus devotes nearly a full page to describing American Sensors' products and accurately relates the features on its then-current CO detectors,

explaining, among other things, their power source, operation, and mechanics.

Accordingly, disclosure of the differences between the 1993 and 1995 CO detectors could not have significantly altered the information available to potential investors, and thus the omission was immaterial as a matter of law.

### B. Statements Made at the "Road Shows"

■ Plaintiffs also claim that the Underwriter defendants made material misrepresentations during the "road shows" when they estimated the Company's earnings per share for the fiscal year ending June 30, 1996.

Plaintiffs concede, however, that the projections at the road shows were merely estimates of future performance made 18 months in advance. Accordingly, such estimates were not guarantees and therefore cannot be considered materially misleading. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276–77 (D.C.Cir.1994); *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993); *Friedman v. Mohasco Corp.*, 929 F.2d 77, 78–79 (2d Cir.1991) (finding that documents projecting market value represented opinions, not guarantees).

Additionally, plaintiffs cannot now complain about road shows statements that were subsequently contradicted by specific disclosures in the Prospectus—which any plaintiff, regardless of his or her level of sophistication, could have read. *See Olkey*, 98 F.3d at 9 (finding that representations made at road shows were immaterial "since they are contradicted by plain and prominently displayed language in the prospectuses.").

Accordingly, defendants' statements at the road shows cannot constitute securities laws violations.

### IV. RULE 9(b)

Even if plaintiffs had stated claims upon which relief could be granted under §§ 11 or 12(a)(2), this Court would dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 9(b), for failure to plead fraud or mistake with particularity. Fed.R.Civ.P. 9(b); *accord Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir.1994).

■ While fraud is not an element of §§ 11 or Section 12(a)(2) claims, plaintiffs nonetheless have alleged fraudulent intent. They now ask the Court not to apply Rule 9(b) to their claims.

To the contrary, it seems only fair that if plaintiffs have plead fraud, they must comply with the requirements of Rule 9(b). *See* Fed.R.Civ.P. 9(b) (applying to "all" averments of fraud); *Melder v. Morris*, 27 F.3d 1097, 1100 n. 6 (5th Cir.1994) (holding that Rule 9(b) applies when §§ 11 and 12(a)(2) claims are grounded in fraud rather then in negligence); *Geiger v. Solomon–Page Group*, 933 F.Supp. 1180, 1189 (S.D.N.Y.1996) (same).[13]

Applying Rule 9(b), the Court finds that the Complaint fails to comply with its heightened pleading requirements. With regard to the challenged statements made at the "road shows," for example, plaintiffs fail to provide fundamental details of the presentations; the Complaint does not even allege who made the challenged statements. Nor does the Complaint contain any facts averring that the Underwriter defendants knew, could, or should have known that the allegedly fraudulent statements in the Prospectus were misleading when made. *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d at 1421 (Rule 9(b) requires plaintiff to plead knowledge of falsity by person who made allegedly false representation).

**13.** *See also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir.), (holding that Rule 9(b) applies when §§ 11 and 12(a)(2) claims are grounded in fraud rather then in negligence), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990) (same); *Fisk v. SuperAnnuities, Inc.*, 927 F.Supp. 718, 726 (S.D.N.Y.1996) (same) (§ 12(a)(2) case); *L.L. Capital Partners, L.P. v. Rockefeller Center Properties*, 921 F.Supp. 1174, 1183 (S.D.N.Y. 1996) (same); *UBS Asset Mngmt. (New York) Inc. v. Wood Gundy Corp.*, 914 F.Supp. 66, 71 (S.D.N.Y.1996) (same); *Neubauer v. Eva–Health USA, Inc.*, 158 F.R.D. 281, 284 n. 1 (S.D.N.Y. 1994) (same); *Schoenfeld v. Giant Stores Corp.*, 62 F.R.D. 348, 351 (S.D.N.Y.1974) (stating that where "the nub of the allegations" under §§ 11 and 12(a)(2) sounds in fraud, Rule 9(b) applies).

796

Accordingly, the Court finds that the Complaint does not comply with the requirements of Rule 9(b). *See McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989).

## V. PLAINTIFFS' APPLICATION TO RE-PLEAD

Although plaintiffs have sought leave to replead and it is the "usual practice upon granting a motion to dismiss to allow leave to replead," *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (citations omitted), plaintiffs have not indicated what amendments they would make in order to sufficiently allege facts to state a claim upon which relief can be granted.

Accordingly, the Court reserves ruling on plaintiffs' application to replead and grants plaintiffs one month from the date of this Memorandum & Order to submit a "Proposed Amended Consolidated and Supplemental Class Action Complaint."

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' Complaint is granted.

If plaintiffs submit a "Proposed Amended Consolidated and Supplemental Class Action Complaint" within one month from the date of this Memorandum & Order, plaintiffs shall also submit a brief of not more than 10 pages in length supporting their request to amend. Opposition papers, no longer than 10 pages each, shall be due two weeks later. Plaintiffs may submit reply papers, limited to five pages, within five days.

So ordered.